### DEEP ROCK OIL CORP. et al. v. BETCHAN et al.

No. 25324. Sept. 11, 1934.

Rainey, Flynn, Green & Anderson and M. M. Gibbens, for petitioners.

Leo J. Williams and Paul L. Arnold, for respondents.

SWINDALL, J. On January 8, 1934, the State Industrial Commission entered the award sought to be reviewed in this proceeding, granting claimant compensation at the rate of $8 per week for permanent partial disability resulting from an injury to his back in the lower lumbar region on the right side. The portions relevant to a determination of the error asserted are as follows:

"That on the 18th day of August, 1932, the claimant was in the employment of respondent, and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date sustained an accidental personal injury arising out of and in the course of his employment, consisting of an injury to his back. * * *

"That by reason of said accidental injury the claimant has suffered a permanent partial disability for the performance of ordinary manual labor from and after June 5, 1933. * * *

"That by reason of said permanent partial disability the claimant has sustained a decrease in wage-earning capacity from and after June 5, 1933, from $4.32 at the time of said accidental injury, to $2.32."

With regard to these findings petitioners herein contend:

"Proposition 1. The evidence does not support the finding of the State Industrial Commission that the claimant's disability resulted from the injury received August 18, 1932, but on the other hand discloses it resulted from a combination of a pre-existing disease and previous and subsequent injuries.

"Proposition 2. The Commission erred in the admission of incompetent testimony."

Claimant first received an injury to his back in February, 1930. While carrying a set of truck springs he slipped on an icy pavement and fell. He was temporarily disabled and was treated by Dr. Benjamin Davis, who examined him and dressed his back on several occasions up to the 18th day of February, after which he returned to work, having been off 18 to 20 days. Dr. Davis testified that at the time he considered the injury a minor back strain. Following claimant's return he worked consistently until the date of the injury in August, 1932, for which he now seeks compensation. It appears that claimant suffered with his back at intervals of 30 to 40 days for 3 or 4 days at each attack during the 18 months between the two injuries, but he would tape his back as Dr. Davis had done and continue to work. At the time of his injury of August 18, 1932, claimant was acting as an assistant boiler maker and doing heavy labor. On that date he and four other men were carrying a truck bolster weighing 900 pounds across a sand floor, and he stepped on an air hose, slipped, "gave over", but did not fall. The others carried the bolster on after claimant turned loose. Instantly claimant was unable to work. He testified that the muscles on the right side of his back near the spine and hip joint reddened, swelled, and hurt; that the injury was to the same place as, but a good deal more severe than, the one of 1930. Dr. Clifford Bassett saw claimant the next day, and on the 20th, 22nd, and 26th of August, and on the 7th of September. Twelve days after the accident August 30th, claimant returned to work, but did only the lightest work for 5 days, after which he "couldn't go." On the 8th of September, 1932, he was sent to Dr. Fred Y. Cronk, at Tulsa, Okla., by whom he was treated in a hospital until the 16th, and under whose care he remained until July, 1933, seeing him occasionally. Sometime between the 16th and 24th of September, 1932, an incident occurred which petitioner contends constituted a subsequent injury. Claimant's 12-year old daughter was ill, and it became necessary to take her to the hospital in his model A Ford automobile. Dr. Cronk said when claimant saw him on the 24th he related having carried his daughter to the car and having cranked it; that he was considerably worse. Claimant denied having carried his daughter; stated that he cranked the car on that occasion and some others; admitted that he was worse, but attributed it to having been on his feet so much, and said that he did not think he hurt himself cranking the car. Claimant worked on the 10th and 11th of November, 1932, and on March 13, 1933, he began work which he continued with the exception of 21 days until June 5, 1933, at which time he quit because, according to his testimony, he "couldn't go, couldn't last." From March 13, 1933, claimant's work was pulling tacks out of the running boards on the side of tank cars. To do this he had to climb rungs on the sides of the cars, and he became unable to do so. He had not worked since June 5, 1933, at the date of the last hearing before the Commission. Medical examinations and X-rays show, without dispute among the doctors, that claimant has existing an osteoarthritic condition affecting his right sacroiliac joint; that some arthritic change had occurred prior to the time of the injury of August 18, 1932.

Petitioners contend that all or at least a part of the present disability results from the arthritic condition predating August 18, 1932, and that, therefore, the disability must be attributed to such cause not related to the injury of that date, or must be apportioned to its constituent causes, the arthritis and the accidental injury, in conformity with the rule of law announced by this court in Noel v. Potts, 157 Okla. 136, 11 P. (2d) 137; Conlin Co. v. Guckian, 163 Okla. 193, 21 P. (2d) 740; and Washita County Gin Co. v. Colbert, 162 Okla. 276, 19 P. (2d) 1080. We do not think those cases govern the situation presented by the facts in the case at bar. The evidence discloses that prior to August 18, 1932, though claimant suffered periodically with his back, he had nevertheless done heavy labor for 18 months, the very circumstances of the accident showing something of its nature, and that thereafter he has been able to do nothing but the lightest work. The attending physician testified that claimant was getting worse all the time during the few weeks following the injury, and this is supported by the fact that he was sent to the hospital in Tulsa for attention after a short period of observation. Everyone concedes that the disability is real, the extent of it is not seriously disputed, and petitioners' witnesses inferentially admit it could be the consequence of the injury. The sharp change from ability to work to inability to do so took place on the date of the accident for which compensation is claimed, and has continued since. Dr. Davis and Dr. McComb, both for petitioners, testified that strain would aggravate an arthritic condition. This,

it seems to us, in the absence of further explanation, was enough to lead the Commission to conclude that the injury caused the disability. Causation need not be established with mathematical precision.

Petitioners, as we understand them, place their argument somewhat as follows: The arthritis existing is sufficient alone to cause the disability or a considerable part of it. Arthritis is a slowly developing process. X-ray pictures taken in September, 1932, and in July, 1933, show no progression in the arthritic condition. Therefore, the condition existed prior to the accident, was not aggravated by it, and caused or principally caused the disability. Sufficient answer to this, we think, lies in the fact that claimant did not have his present disability prior to the accidental injury of August 18, 1932, and did have it directly following that incident. Dr. McComb saw the X-ray photographs, and still testified that the injury probably affected the present condition by aggravating the arthritis. For these reasons, we think the evidence authorized the Commission to find that the disability following the accident of August 18, 1932, resulted from that injury alone, or in combination with the pre-existing disease by aggravating it. Fairmont Creamery Co. v. Lowe, 160 Okla. 32, 15 P. (2d) 133.

Of course, in the line of physical causation, the osteoarthritis preceded the accidental injury, and the degree of disability accruing from each thereafter cannot be separated, but it does not follow, as petitioners contend, that the Commission must undertake to separate the effects of the two and limit compensation to results of the latter only. If the disability was not solely the result of the accidental injury, it was the result of a merger of the two causes, precipitated and substantially caused by the accidental injury. In such case, where the two causes interact upon each other to produce the ensuing physical condition, it is not incumbent upon the Commission to trace out the causes, but it may award compensation for the entire disability as a result of the accident. Oklahoma Gas & Electric Co. v. Slocum, 159 Okla. 245, 15 P. (2d) 29; Fairmont Creamery Co. v. Lowe, supra; F. A. Gillespie & Sons Co. v. Johnson, 160 Okla. 222, 16 P. (2d) 870. Prior disability must be taken into account in measuring the compensation (section 13356, O. S. 1931), but where, as in this case, the injury falls under the "other cases" classification of the statute, and claimant has worked at his present employment for a period of 18 months, there would seem to be ample evidence from which to find his wage-earning capacity equivalent to his actual wages, thus accounting for his prior disability as reflected in his wage-earning capacity. See Amerada Petroleum Corporation v. W. H. Thompson et al., 169 Okla. 45, 35 P. (2d) 903, and Nease v. Hughes Stone Co., 114 Okla. 170, 244 P. 778.

Petitioners next contend that the occasion upon which claimant took his daughter to the hospital constituted a subsequent injury to his back, contributing to his present disability, and that the disability caused by that injury must be segregated as noncompensable. Dr. Cronk based his opinion that this incident affected claimant's condition upon the assumption that claimant carried his daughter to the car in addition to having cranked it, which assumption the Commission was entitled to treat as erroneous under claimant's denial, as related above, so far as it included carrying the girl. This leaves the record without evidence as to the effect of cranking the car alone, in doubt as to whether it had any effect, and in need of expert testimony to resolve that doubt. The evidence sustains the view that its effect, if any, was certainly not great in comparison with the August 18th injury. However, assuming it had some effect on the ensuing condition, we are of the opinion claimant was entitled to recover full compensation for his entire disability. Not every incident following an injury which physically aggravates it can be treated as a responsible intervening agency. In New York Indemnity Co. v. Miller, 163 Okla. 283, 22 P. (2d) 107, this court quoted with approval from Head Drilling Co. v. Industrial Accident Commission (Cal.) 170 P. 157, in part, as follows:

"We are of the opinion that a subsequent incident or accident aggravating the original injury may be of such a nature and occur under such circumstances as to make such aggravation the proximate and natural result of the original injury."

It further stated with approval the holding in Phillips v. Holmes Express Co., 179 N. Y. S. 400, as follows:

"* * * The record showed that an employee had his arm fractured and that about four months later the fracture parted when he attempted to crank an automobile. It was held that the parting of the fracture was but a result of the first accident, and that the insurance carrier carrying insurance at the time of the first accident was liable therefor."

In Tippett & Bond v. Moore, 167 Okla. 636, 31 P. (2d) 583, our court held disability referable alone to a first injury when a sec-

ond one had intervened to precipitate further incapacity. The principle is a familiar one in tort law and was stated in Hoseth v. Preston Mill Co. (Wash.) 96 P. 423, in this language:

"The rule is that the injured person must exercise reasonable care to effect a cure, both as to the selection of a physician and as to his own personal conduct, and if he does so he may recover all damages flowing naturally and proximately from the original injury. And in this case, if the respondent was out on crutches under the instructions of his physician, and was in the exercise of due and reasonable care at the time of his fall, he may recover the entire damages sustained, provided, of course, the second injury was attributable to and would not have occurred except for the original injury."

It seems that a law designated to compensate workmen for loss of earning capacity from industrial accidents must have been intended to extend its shield, at least, to aggravations affecting the course of the injury during convalescence when such are produced by not unnatural events, and involve no omission or breach of duty. We, therefore, think the Commission sustained by the record in disregarding the automobile incident as a responsible cause.

Petitioners' second proposition urging that certain evidence was improperly admitted related entirely to the testimony of the medical witness used by claimant. Since we have not found it necessary to resort to that witness' testimony to sustain the award, the contention becomes irrelevant.

The award of the State Industrial Commission entered January 8, 1934, in favor of Fred B. Betchan against the Deep Rock Oil Corporation and H. N. Greis and E. H. Moore, receivers, is, for the foregoing reasons affirmed.

RILEY, C. J., and McNEILL, BAYLESS, and WELCH, JJ., concur.