JOSEPH E. ALLEN, employee, v. THE MAXWELL COMPANY, INC., employer, AMERICAN MUTUAL LIABILITY INSURANCE CO., insurance carrier, and FLORIDA INDUSTRIAL COMMISSION.

11 So. ʼ(2nd) 572                                    January Term, 1943
February 2, 1943                                              En Banc.

*David Lemelman,* for appellant.

*McKay, Dixon & DeJarnette,* for appellees.

CHAPMAN, J.:

The sole question presented for adjudication on this appeal is whether or not the appellant, Joseph E. Allen, the employee, sustained a compensatory injury within the scope of his employment. The relationship of employer and employee is

admitted on the record by counsel. Sub-section 6 of Section 440.02, Florida Statutes 1941, defines the term "Injury" as meaning personal injury or death by accident arising out of and in the course of employment, and such diseases or infections as naturally or unavoidably result from such an injury. Sub-section 18 of Section 440.02, *supra,* defines the "time of injury" as meaning the time of the occurrence of the accident resulting in the injury. Sub-section 19 of the Section *supra,* provides that where a pre-existing disease is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable.

The appellant, for approximately five years prior to September 30, 1940, was employed by The Maxwell Company, Inc., as a night watchman and upholsterer. When injured he was working as a watchman and received compensation of $15.00 per week and was 64 years of age. The appellant went into the basement of the building in which he was employed to start a pump to remove water from the basement of the warehouse when the lights were out, and in so doing fell over a chair and, "I knocked the skin off my injured leg, place about as big as a quarter, but I didn't think it would be much." He continued to work after September 30, 1940, until November 26th thereafter. He went to the hospital for treatment; and, on July 30, 1941, he testified, "I haven't been able to work since, been in bed three weeks yesterday." The appellant is now permanently disabled. He worked continuously for approximately five years prior to November, 1940. During the year 1937 the same leg was weak, swollen and painful, and being discharged from the hospital he returned to his work under instructions from a physician to wear a rubber stocking on his weak leg, which he was not doing at the time of receiving the alleged injury.

One of appellant's physicians testified that the right leg disclosed an abrasion and was inflamed, and an infection radiated from the abrasion and it was a recurrence of the old condition of the leg. It was his view that the abrasion would not disable, but an infection following the abrasion could

disable the appellant. Another of appellant's physicians diagnosed the trouble as dermatitis of the leg and the personal history disclosed a recurrence after two or three years. It was possible for the abrasion to set in motion this pre-existing ailment. A physician called for the employer and diagnosed the ailment as varicose veins, superinduced by obliteration of lymphatic glands, but failed to find evidence of trauma. The fourth physician was of the view that the disability was not the result of a traumatic injury sustained in September, 1940, but was traceable to faulty circulation of long standing. While the fifth physician concluded that the patient had varicose veins which prevented circulation and the tissues were of low vitality which easily invited infection. He diagnosed the ailment as infectuous dermatitis superimposed upon the varicose veins.

Counsel for appellant presents for adjudication the question viz: Where an employee had a pre-existing injury, which injury had healed and he was able to continue his work, but subsequently suffered an injury to the same area and, as a result, the employee was disabled so that he could not continue with any employment thereafter; under such circumstances, is the employee entitled to compensation under the Workmen's Compensation Act? It is admitted that the pre-existing physical condition of the appellant failed to interfere with the discharge of his duties as nightwatchman except for a few weeks during the five years period prior to September 30, 1940. The physical fitness of the applicant to discharge the duties of night watchman had never been questioned by the employer within the five year period of employment, and it is raised for the first time by the carrier when the applicant seeks compensation for his alleged injury. Two physicians corroborate the statement of the appellant to the effect that his leg disclosed trauma shortly after September 30, 1940.

Counsel for appellant contend that the physical fitness of the appellant to discharge the duties of his employment had never been questioned, although he had, during a part of the time, a pre-existing physical condition, coupled with the injury sustained in the fall when discharging the duties of

his employer, and the combination of these two causes produced the proximate cause of the appellant's disabilities and that under these conditions he should recover. The case of City of Lakeland v. Burton, 147 Fla. 412, 2 So. (2nd) 731, is cited. The facts therein disclosed that the decedent sustained an injury in the course of his employment and was thereby disabled, and continued to suffer intense pain and later was found dead in bed; and the record shows that the cause of death was not the injury sustained in the course of his employment, but to an overdose of medicine by the claimant voluntarily taken. , There was an award for the claimant, and on appeal here this Court, in part, said:

"The record is clear that the injury caused the injured man to suffer great pain in the abdominal region and the suffering of such pain by the deceased caused the physician to prescribe, and the deceased to take, the narcotic. So, it is clear that there was direct causal connection between the injury and the death, even if death followed as the immediate result of taking the narcotic. It therefore, follows that the taking was not an independent intervening cause but was the result of the original injury, and the employer and insurance carrier are liable under the Workmen's Compensation Act. . ."

Likewise, 71 C. J. par. 358, page 604, is cited viz:

". . . It is not necessary, in order for an employee to recover compensation as an injured workman, that he must have been in perfect health or free from disease at the time he received the injury. Every workman brings with him to his employment certain infirmities; his employer takes him as he finds him and assumes the risk of a diseased condition aggravated by injury. Compensation is not made to depend upon the condition of health of the employee, or upon his freedom from liability to injury through a constitutional weakness or latent tendency; compensation is awarded for an injury which is a hazard of the employment, and it is the hazard of the employment acting upon the particular employee in his condition of health and not what that hazard would be if acting upon a healthy employee or upon the average employee. If the injury is the proximate cause of his death or disability for which compensation is sought, the previous

physical condition of the employee is unimportant and recovery may be had for injury independent of any preexisting disease."

In the case of Crowley v. City of Lowell, 223 Mass. 288, 111 N.E. 786, the evidence disclosed that the claimant had a pre-existing constitutional disease known as syphilis, which was dormant; his ability to perform the work for which he was hired was not impaired thereby, but because of an accident arising out of the course of his employment his nervous system suffered a shock sufficiently severe to aggravate and accelerate his syphilitic condition, resulting in paralysis and insanity, which disabled him for future work. It was held that he could recover because the statute did not prescribe standards of physical fitness to which the employee must conform and compensation provided for is not based on any implied warranty of health or immunity from latent and unknown tendencies to disease which may result in a disability. See Indianapolis Abattoir Co. v. Coleman, 65 Ind. App. 369, 117 N.E. 502.

The case of Limited Mut. Comp. Ins. Co. v. Industrial Acc. Com'n., 37 Cal. App. (2nd) 50, 98 Pac .(2nd) 827, discloses that the claimant was employed as a lineoleum layer from 1922 to 1937. During the year 1925 he fell and injured his left knee, when a surgical operation was performed and he returned to work, but the knee gave him continuous trouble. He received a second injury in 1937 to the same knee when in the course of employment. He consulted a physician immediately, when a second surgical operation was performed on the same knee when a tumor was removed and pus drained therefrom. The existence of a pre-existing non disabling condition cannot preclude an award. Industry takes the employee as he is at the time of employment and the statute does not provide a degree of physical fitness to perform services or labor.

In the case of Deep Rock Oil Corp. v. Betchan, 169 Okla. 42, 35 Pac. (2nd) 905, it was shown that the claimant worked on the 10th and 11th days of November, 1932, and on March 13, 1933, was employed to pull tacks out of the running boards on the side of tank cars. He was required to climb the rings

on the side of the tank cars, which he did from March to June 5th, 1933, when he became unable so to do, and consulted a physician. The physician agreed that the claimant had a bone condition dating back prior to the time of his employment and this condition caused arthritis. It was contended that the claimant could not recover because the arthritic condition occurred prior to the time of his employment. The court held that the pre-existing physical condition of the employee, namely, arthritis, coupled with the climbing of the rings of the ladder on the tank cars, cannot be separated, but when considered together, effected disability, then a merger of the two causes effected the disability.

The rule expressed in the cases *supra* is approved by Schneider on Workmen's Compensation Law, Vol. 1 (2nd) Ed.), par. 138, pages 517-519, viz:

"Aggravation of Pre-existing Condition.—'Likewise the courts, consistent with the theory of workmen's compensation acts, hold with practical uniformity that, where an employee afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred and the disability or death does not result from the disease alone progressing naturally, as it would have done under ordinary conditions, but the injury aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the compensation act.

"An employee's abdomen was injured by a fall in the course of his employment. The court said: 'Doubtless there was a diseased condition before the injury; it may be that the injury would not have caused his death but for these antecedent conditions, which, it is clear from the evidence, would warrant vacating the present award.'

" 'At the time of his accident, Harry Banks was suffering from typhoid fever in the incubation state, which became aggravated by the severe injury to his head through the con-

sequent lowering of his resisting power and the said disease thus aggravated caused his death.' The court of appeals affirmed a judgment of the appellate division affirming the award.

Where the employee, while at work slipped and bumped his neck, went home for three weeks, then worked, then quit, and nine months thereafter died of pulmonary tuberculosis, in affirming an award the court said: "The evidence shows quite clearly, and the commission has found, that the disease existed before the injury, which accelerated the disease and shortened life. The injury caused a hemorrhage, which, so far as the evidence discloses, the deceased never experienced before or after, and there is medical testimony to the effect that such an injury would develop the disease then existing. If an employee has a disease and having the same, receives an injury 'arising out of and in the course of employment,' which accelerates the disease and causes his death, such death results from injury, and the right to compensation is secured even though the disease itself may not have resulted from the injury.'

"Where an employee was at the time of his injury suffering from a tumor, which condition was aggravated by the injury, he was nevertheless entitled to compensation."

One of the physicians examined claimant on August 12, 1941, and his history disclosed an injured leg. An ulcer appeared, requiring about three months to heal. The ulcer remained healed and he wore a bandage to improve the circulation. His duties required him to work in a wet basement of standing water and the bandage was constantly wet, when a rash appeared on his leg and extended to his ankle. He fell over a chair on September 30, 1940, and the leg became progressively worse, resulting in disability in November, 1940. The intention of the Act is to compensate the employee for the loss of earning capacity. If the employee is injured but is able to work, he is not compensated. If he has a pre-existing disease but able to work and is injured while engaged in the course of the employment and a merger of the pre-existing disease and the injury sustained results in his disablement, or the pre-existing disease is accelerated or aggravated by an

injury arising out of the course of employment, then it becomes a compensable injury.

Presented on this record are a set of facts which can or may be decided either way and logical and convincing reasons assigned for the conclusion reached. It is true that reasonable and just men, actuated solely by a desire to reach the truth and justice of the controversy when considering the facts adduced and law applicable thereto, may reach different conclusions. We can not hold on this record that the lower court committed reversible error in entering the order appealed from, and for this reason it becomes our duty under the law to affirm the conclusions reached by the lower court.

Affirmed.

BUFORD, C. J., TERRELL, BROWN and THOMAS, JJ., concur.

ADAMS, J., agrees to conclusion.

SEBRING, J., not participating.