**CRESCENT WHARF & WAREHOUSE CO.**
**et al. v. CYR et al.**
**No. 1270–SD.**

United States District Court
S. D. California, S. D.
May 8, 1952.

DeWitt A. Higgs and Miller, Higgs & Fletcher, all of San Diego, Cal., for complainants.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty. Los Angeles, Cal., for defendants.

WEINBERGER, District Judge.

The complainants herein, Crescent Wharf and Warehouse Company and Pacific Employers Insurance Company seek a mandatory injunction setting aside a compensation order made by a Deputy Commissioner of the United States Department of Labor on May 17, 1951.

It appears that compensation was awarded for disability after an injury which occurred to William Lasche on September 6, 1950, and further compensation was awarded for disability after a second injury which occurred to the same employee on November 7, 1950. The complainants contend that there is no evidence in the record to support an award of compensation for disability occurring after the injury of November 7, 1950.

The Commissioner found that on September 6, 1950, while William Lasche was performing services for his employer, he sustained personal injury resulting in his disability when, while easing himself down from the top of a hatch, he landed on his left foot and suffered a straining injury in the region of his left hip. The Commissioner further found that as a result of said injury Lasche was wholly disabled for 12 intermittent days from September 6, 1950, to and including November 6, 1950. Such findings are amply supported by the record.

The record before the Commissioner disclosed that after the injury of September 6, 1950, Lasche came to the office of his physician, Dr. Knudtson, complaining of severe pain in the left hip, thigh and knee; that the pain did not respond to treatment until two or three weeks had elapsed; that after two or three weeks (quoting from the physician's letter) "it began to respond slowly but was very difficult for Mr. Lasche to walk even with the support of a cane. He tried to work but was unable to continue doing so."

The record further discloses that Mr. Lasche testified that after eight or nine days from the date of the original injury he was hardly able to work at all; that he could not take work because of the condition of his leg and only worked intermittently after the injury of September 6, 1950.

The record further shows that he refused work on various days because of his injury, and that on November 6, 1950, the day before the second injury, he refused work.

With reference to the injury of November 7, 1950, the Commissioner found

"that on the morning of November 7, 1950 while the claimant herein was at home and standing on the 2nd or 3rd step of a step ladder in his garage he lost control of his injured left leg, falling to the concrete floor of the garage, and shortly thereafter upon being medically examined was found to be suffering from a fracture of the neck of the left femur; that because of the instability of the left leg this second injury is directly attributable to the injury of September 6, 1950 * * *."

The scope of this Court on a review of this sort is limited; as stated by the Supreme Court of the United States in O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483, the Commissioner's findings "are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole." The question which confronts us is whether there is evidence to support the Commissioner's finding that the second injury was directly attributable to the first.

Defendants' counsel maintain that a causal relationship existed between the first injury, sustained in the course of employment, and the second injury which Lasche sustained at home. Citing Schneider's Workmen's Compensation Text, (3rd edition) Vol. 6, p. 53, they quote:

"* * * It makes no difference how long the chain, nor how many links, as

long as each act or link accounts for the next, the liability existing in the first injury is carried forward to the last."

Among other cases defendants' counsel have cited the case of Continental Casualty Co. v. Industrial Commission, 1929, 75 Utah 220, 284 P. 313, 314, in that case claimant was a taxi-driver who wrenched his left leg when he fell while in the course of his employment; later he went back to his regular work, but as he was on his way thereto, walking to the car-line, he slipped and fell and broke his leg. The Commissioner found that the second accident was entirely due to his former injury three days before, "by reason of the fact that the applicant was unable to bear his full weight on the said injured limb, this being the result of the weakened condition caused by the [first] accident".

The Supreme Court of Utah in its opinion, in 284 P. at page 314, cited with approval Corpus Juris on Workmen's Compensation Act, page 70, as follows:

"'In determining whether the physical harm sustained by the employee was the consequence of the accident or the injury, the controlling question is the continuity of the chain of causation and the absence of an intervening independent agency; the inquiry as to whether the result is the natural and probable one is immaterial.'"

Counsel for defendants have also cited a case decided under the Texas Workmen's Compensation Law, Vernon's Ann Civ.St. art. 8306 et seq., Zurich General Accident & Liability Ins. Co. v. Daffern, 5 Cir., 1936, 81 F.2d 179. In that case the employee lifted a heavy steel shaft on April 4, 1934 and on April 9, 1934 lifted a heavy keg of nails; on both of such dates he was performing services within the scope of his employment. Following the lifting on April 9, 1934, he contracted hernia and was operated upon for such condition. As a result of the operation, claimant suffered a long confinement, and then was found to be afflicted with a spastic colon. The Court in its opinion observed, in 81 F.2d at page 181, that the confinement was the "inevitable" incident of the operation for hernia, and was a "necessary" incident thereto, and such confinement aggravated pre-existing ailments to produce the spastic colon which disabled the claimant, for which compensation was awarded.

At page 181 of 81 F.2d the Court continued:

"* * * When an employee suffers a specific injury in the course of his employment, he is not confined to the compensation allowed for that specific injury if that injury, or proper or necessary treatment therefor, causes other injuries which render the employee incapable of work."

A California Supreme Court case decided in 1918, Head Drilling Co. v. Industrial Accident Commission, 177 Cal. 194, 170 P. 157, gives another instance of a second injury occurring away from the employment, but attributed to a first injury suffered in the scope of the employment. The claimant sustained a fracture of the left leg and a badly comminuted fibula. He was taken to a hospital; there was difficulty in setting the bones in place and holding them for a permanent union. He was discharged from the hospital, the doctor deeming it best that he should begin to use the leg, but still supervising the case. He went to his home, the cast still on his leg, using crutches. Three days later he was sitting at his dining room table and arose to get some pictures from a shelf in back of him. There was a wrinkle in the rug which straightened out under his good foot and he caught at the table with his hand; his bad heel struck the pedestal of the table or a chair. An X-ray disclosed the bones were out of place.

The Commission found that the bones were often in danger of separation from natural causes in cases of that type; that such a separation might be anticipated; "that the evidence was insufficient to show that the separation was due to any substantial independent intervening cause or to any independent intervening cause; that said separation was instead a proximate and natural result of the original injury."

The Supreme Court, 170 P. at page 158 observed:

"* * * We are of the opinion that a subsequent incident or accident aggravating the original injury may be of such a nature and occur under such circumstances as to make such aggravation the proximate and natural result of the original injury. Whether the subsequent incident or accident is such, or should be regarded as an independent intervening cause is a question of fact for the commission, to be decided in view of all the circumstances, and its conclusion must be sustained by the courts whenever there is any reasonable theory evidenced by the record on which the conclusion can be upheld. The testimony of Scott, as to exactly what occurred on the evening of April 15th must be accepted here as true. According to this, there was nothing but the accidental striking by Scott of the heel of the foot of the injured limb against the pedestal of the table or a chair, done in the attempt to save himself from a fall, something to have been reasonably anticipated when he was discharged from the hospital in the condition in which he then was, and all of which happened without any negligence on his part. Surely, if such a thing might cause a displacement of the bones, he was in no condition to be called on to go about without an attendant, and it was reasonably to be anticipated that if he was left thus to care for himself, such a thing would occur. We have already noted the serious nature of the fracture, the length of time required to effect a permanent reunion of the bones, and the extreme difficulty of keeping the bones in place and preventing displacement. Under all the circumstances it appears to us that it might well be concluded, as was concluded by the commission, that such an incident as was described by Scott was not an independent, intervening cause, within the meaning of the law, but that the striking of the heel and consequent separation of the bones, which had been partially, but not permanently, united, was simply a proximate and natural result of the original injury."

Another California case, decided by the Supreme Court in 1915, Pacific Coast Casualty v. Pillsbury, 171 Cal. 319, 153 P. 24, shows the second injury in a different light than in the cases we have heretofore discussed. The employee was cranking a car while working in a garage and the radius of his right arm was broken and his wrist dislocated; the injury received proper treatment and progressed toward recovery as usual in such cases. Then a month and a half after the accident while claimant was on an automobile trip not connected with his employment the bone which had been broken slipped or shifted in such a manner that it was necessary to re-set it, thus prolonging his disability. The employer and the insurance company admitted liability for the average period that would have been required if no new injury had occurred to the bone, but refused to pay for medical treatment and the prolongation of disability caused by the slipping of the bone. The Commission allowed compensation for the full time and for all medical services.

The Supreme Court observed, in 153 P. at page 26, that the Commission had no power to award compensation for the disability incident to the slipping of the bone unless such slipping was the "natural and proximate result of the original accident". The Court then referred to the law in force prior to the Workmen's Compensation Act, to the well established principle that a person injured by the negligence of another must use ordinary care to avoid aggravating or prolonging the effects of such injury and that such person could not recover for an increase of disability caused by his failure to use such care. The Court then held that an additional injury to the claimant caused by carelessly using his arm too much was not within the provisions of the statute and that he could not be awarded compensation therefor. The case was sent back to the Commission to re-hear it and to allow only for the disability which they might find would exist if the bones had not slipped.

In Deep Rock Oil Corporation v. Betchan, 169 Okl. 42, 35 P.2d 905, at page 908, 102 A.L.R. 786, the Supreme Court of Oklahoma announced the following principle of Workmen's Compensation law:

"It seems that a law designed to compensate workmen for loss of earning capacity from industrial accidents must have been intended to extend its shield at least to aggravations affecting the course of the injury during convalescence when such are produced by not unnatural events and involve no omission or breach of duty. * * *"

The Court based its enunciation of this principle as follows:

"In Tippett & Bond v. Moore, 167 Okl. 636, 31 P.2d 583, our court held disability referable alone to a first injury when a second one had intervened to precipitate further incapacity. The principle is a familiar one in tort law and was stated in Hoseth v. Preston Mill Co. 49 Wash. 682, 96 P. 423, 425, in this language: 'The rule is that the injured person must exercise reasonable care to effect a cure, both as to the selection of a physician and as to his own personal conduct, and if he does so he may recover all damages flowing naturally and proximately from the original injury. * * *'"

While counsel for the respective parties have cited cases decided under state compensation laws, and we have reviewed others not cited, we have found no case decided under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., which specifies the conditions under which a second accident such as Lasche's may be attributed to a first accident suffered in the scope of employment.

The Act does include in its definition of "injury" such occupational disease or infection as naturally or unavoidably results from such accidental injury, the case of Ocean S. S. Co. of Savannah v. Lawson, 5 Cir., 68 F.2d 55, contains language which we feel is appropriate. In that case, the employee died, not as a direct result of an injury to his foot suffered in the course of his employment, but because of a tetanus infection. The wound had been properly treated, was clean and apparently healing when the employee left the hospital. Later, he left his foot unbandaged and wore a colored sock. The Court stated, in 68 F.2d at page 56:

"* * * The main disputable fact before the commissioner was whether the infection which killed him resulted naturally or unavoidably from his injury or was caused by his own mistreatment and exposure of his wound. * * * By a fair construction of the statute a death caused by infection following an injury is caused by the injury if the infection followed naturally or unavoidably; but, if the infection is not natural but extraordinary, and if it could by reasonable care have been avoided, death is not to be considered as due to the injury."

■ We cited this case to counsel and asked for additional briefs; counsel for defendants maintained that the doctrine of contributory negligence has no place in cases under workmen's compensation acts.

We do not agree that this is so when a second injury occurs outside the scope of the employment. We think an injured employee owes to his employer, at least while in the pursuit of the employee's own concerns, the duty of reasonable care to avoid aggravation or prolongation of his disability.

■ The facts show that Lasche was using a cane after the first injury, that while he had worked all but twelve intermittent days between the two accidents, he had refused work the day before the second injury because of disability. A man in such a condition who steps upon a ladder, thus bearing his full weight upon an injured leg can hardly be said to have been using any care with reference to his injury.

It is our view that subsequent injury was the result of an independent intervening cause, that the subsequent injury did not follow naturally or unavoidably; that it could have been avoided by reasonable care; and, that there is no evidence in the record to support any different conclusion.

An injunction should issue, and the matter should be referred to the Commissioner to fix, after a hearing if necessary, compensation for the period which the original disability might have continued if the second accident had not occurred.