## JOSH DAVIS v. ARTLEY CONSTRUCTION COMPANY

18 So. (2nd) 255                                    January Term, 1944
May 19, 1944                                                  En Banc
Rehearing Denied June 20, 1944

*C. N. Ashmore* and *G. T. Whitfield, Jr.,* for appellant.

*Keen & Allen, A. Frank O'Kelley, Jr.,* and *Worth Dexter, Jr.,* for appellee.

CHAPMAN, J.:

On May 1, 1942, Josh Davis, a colored man, was an employee of the Artley Construction Company and had been unloading lumber from a box car. The work was strenuous and the weather on this day was very warm. He was about forty years of age, sixty-seven inches in height and weighed 175 pounds. He had enjoyed usual good health prior to May 2, 1942. Willie Jones, another colored man working in the same squad with Josh Davis, did not hear him complain but observed that Josh's shirt was wet all over and wetter than the shirts of other men working in the car at the time. George Manuel worked in the same squad with Josh but not in the box car and he observed Josh at work and did not see him stop or complain about being sick.

Josh Davis testified that on the afternoon of May 1, 1942, when unloading lumber from a box car around 7:00 o'clock P. M. he became overheated and had a dizzy feeling; he had worked all day; had unloaded three cars of lumber during the day and neither car had windows or other ventilation therein; it was very very hot in the box cars; it was much warmer in the box cars than on the outside; he worked for about one hour after he felt the dizzy sensation and then went home; he was sick all night, but on May 2, 1942 (Saturday morning) he returned to work, but fainted or "fell out" and was physically unable to begin the day's work. He was carried to a doctor and became unconscious. Prior thereto during his entire life he had never been treated by a physician.

It is undisputed by the record that the colored man (Josh Davis) suffered a cerebral hemorrhage, resulting in a paralysis of his left side. Likewise he had syphilis in the tertiary (third) state, and is now permanently disabled. Presented on the record is considerable speculation as to the cause of the disability on the part of physicians called and testifying as witnesses in the case. Counsel for the parties are about in accord on the facts involved, but in the application of the controlling principles of law to the facts in the record different conclusions are reached.

Sub-section (19) of Section 440.02, Fla. Stats. 1941, defines accidents thusly:

"(19) 'Accident' shall mean only an unexpected or unusual event, happening suddenly. A mental or nervous injury due to fright or excitement only or disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or narcotic drugs, shall be deemed not to be an injury by accident arising out of the employment. Where a pre-existing disease is accelerated or aggravated by an accident arising out of and in the course of the employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable."

The facts involved in the case of City of Lakeland v. Burton, 147 Fla. 412, 2 So. (2nd) 731, were in effect that the claimant was injured or disabled in an accident arising out of and in the course of his employment. He continued to suffer intense pain until some 14 days thereafter the employee was found dead in his bed. The cause of his death was due to a narcotic prescribed by his physician to alleviate the pain caused by the injury. If the narcotic had been taken in quantities as prescribed, death would not have ensued, but an over-dose was taken, thereby causing death. We, in part, said: "It, therefore, follows that the taking of the narcotic was not an independent intervening cause but was the result of the original injury and the employer and insurance carrier are liable under the Workmen's Compensation Act."

The facts involved in the case of Orr v. Florida Industrial Commission, 129 Fla. 369, 176 So. 172, are viz: Maxwell was employed as a plumber and while engaged in laying sewer pipe, using a hand furnace or blow torch on a very warm day, the blow torch or hand furnace subjected the employee to intense heat for several hours when he collapsed. After a short rest he returned to work and collapsed the second time and shortly thereafter died. We held that the injury sustained and subsequent death were compensable.

The facts involved in Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So. (2nd) 342, were: Cline was a cabinet maker and had heart trouble, accompanied with fainting spells. When a fainting spell occurred, if he reclined or relaxed he would soon recover; if he did not, then he

would soon become unconscious. While working for his employer in the course of his employment he had a heart attack and fell on a concrete floor where he had been employed to work. In the fall the employee's head struck the concrete floor, causing a fractured skull. It was contended that the employee could not be compensated because of a pre-existing heart disease. The court below held the injury was compensable and on appeal here was affirmed.

The case of Allen v. Maxwell, 152 Fla. 340, 11 So. (2nd) 572, involved a pre-existing injury. The claimant was employed as a night watchman and upholsterer. He went to the basement of the building where employed to start a pump to remove water from the basement, when the lights went out. He fell over a chair and injured a leg. The injury grew progressively worse, resulting in disability during November, 1940. We, in part, said:

". . . The intention of the Act is to compensate the employee for the loss of earning capacity. If the employee is injured but is able to work, he is not compensated. If he has a pre-existing disease but able to work and is injured while engaged in the course of the employment and a merger of the pre-existing disease and the injury sustained results in his disablement, or the pre-existing disease is accelerated or aggravated by an injury arising out of the course of employment, then it becomes a compensable injury."

A statute similar to our Florida Compensation Statute here presented, was involved in the case of Patrick Crowley's Case, 223 Mass. 288, 111 N. E. 786. Crowley performed arduous work for the City of Lowell, for which he was employed. He was injured in the course of his employment and the testimony developed that Crowley had a pre-existing constitutional disease, which, being dormant, left his ability to perform the work for which he had been employed unimpaired. His injury resulted in paralysis or insanity and total permanent disability.

It was contended that Crowley could not recover under the Workmen's Compensation Act, because of the pre-existing disease of syphilis. The court sustained liability and, in part, said (text 223 Mass. 289) :

"The statute prescribes no standard of fitness to which the employee must conform, and compensation is not based on any implied warranty of perfect health or of immunity from latent and unknown tendencies to disease which may develop into positive ailments if incited to activity through any cause originating in the performance of the work for which he is hired. What the Legislature might have said is one thing; what it has said is quite another thing; and in the application of the statute the cause of partial or total incapacity may spring from and be attributable to the injury just as much where undeveloped and dangerous physical conditions are set in motion producing such result, as where it follows directly from dislocations or dismemberments or from internal organic changes capable of being exactly located. *Madden's Case, 222 Mass. 487.*"

The case of Bartlinski v. Northumberland Mining Co., 117 Pa. Sup. 437, 177 Atl. 518, discloses facts viz: Claimant, on August 20, 1932, was in good health and employed as a miner, One of the coal cars jumped the track and the claimant, with two other men, was engaged in putting the car on the track and in so doing it was necessary to use a wooden lever or rail 10 or 11 feet long. The decedent, with his co-fellow employees, took hold of the lever and tried to lift the car and on the third effort was successful. After the strain the claimant complained of a pain in the back and everything was blue and he could hardly walk. He tried to work after the accident but was unable so to do on account of weakness. He was admitted to a hospital and his condition diagnosed as sciatica and a sprained back. His tonsils were removed and he was treated by a dentist and later discharged. On November 9th he returned to the hospital and on December 24, 1932, was operated on and an intra-abdominal tumor discovered, and on January 11, 1933, claimant died and the cause of death was the tumor, which had existed prior to August 20, 1932. The court held that the injury was compensable on the theory that the accident or injury on August 20, 1932, aggravated and accelerated the pre-existing disease.

The case of Calhoun v. Rayville Ice & Fuel Co., (La. App.) 161 So. 660, discloses facts viz: On December 4, 1933, claim-

ant while removing some boards from the top of an ice cream tank was struck on the arm and shoulder by a falling post, which rendered him immediately ill. Pains suddenly developed in his left arm, wrist and chest. He felt faint, weak and nauseated and thereafter was not able to perform any work. The defendant contended that the claimant at the time of receiving the injury, which was not disputed, was suffering from a chronic heart disease which had been present for a long time prior to the date that he was injured and for this reason the claimant was not injured in an accident occurring in the course of his employment. The court held the injury compensable on the theory that the physical exertion of the claimant at the time of receiving the injury caused internal injuries which aggravated or accelerated the then pre-existing dormant heart disease.

The case of Fairmont Creamery Co. v. Lowe, 160 Okla. 32, 15 Pac. (2nd) 133, involved facts viz: Claimant slipped on the concrete floor of his employer's premises and was so injured that assistance was required in getting up. She was driven in an ambulance to her home and a doctor summoned. Prior to the inury she was strong, never been ill and worked around fourteen hours a day; that since the injury she had been confined to her bed most of the time and unable to do light house work. It was the opinion of the physician that her ailment was due to a combination of gall bladder stones and the accident. The claimant, at the time of the fall, had gall bladder stones and the fall aggravated and accelerated the then pre-existing physical ailment. The court held the claim compensable.

Recovery of compensation by a claimant for an injury is not conditioned on good or perfect health. The statute here involved does not require a health certificate or to be free from disease at the time he is employed or injured. It is reasonable to assume that a workman has physical infirmities and take them, if any, with him to his employment. The employer accepts the employee in such physical condition as he finds him and assumes the risk of a diseased condition aggravated by injury. Compensation is not made to depend upon the condition of health of the employee but for an injury which is a hazard of employment. See 71 C.J. 604, par. 358.

The controlling principle of law enunciated by the cited Florida cases, *supra,* and approved generally in other jurisdictions, is well and succinctly expressed by Schneider on Workmen's Compensation Law, Vol. 1 (2nd ed.) 517, par. 138, viz:

"Aggravation of Pre-existing Condition.—'Likewise the courts, consistent with the theory of workmen's compensation acts, holds with practical uniformity that, where an employee afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred and the disability or death does not result from the disease alone progressing naturally, as it would have done under ordinary conditions, but the injury aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the compensation acts.' "

The claimant perfected his appeal to the Circuit Court from an order of the deputy commissioner dated August 24, 1942, and from the order of the Circuit Court here under our holding in Johnson v. Midland Constructors, Inc., 150 Fla. 353, 7 So. (2nd) 449. On February 29, 1944, in the case of Tigertail Quarries v. Ward, 154 Fla. 122, 16 So. (2nd) 812, not yet reported in Florida Reports, we receded, in part, from our holding in the Midland Case and held that appeals on compensation suits shall be from an order of the full Commission and not from an order of a deputy commissioner. Counsel for the appellee contends here that our recent holding should be applied to the appeal in the case at bar and the appeal dismissed.

The writer, in concurring in the majority opinion of the Court in the Tigertail Quarries case, was of the view that our holding therein should operate prospectively and not retroactively. If our holding therein operates retroactively, as contended for by counsel for appellee, then appellant is

denied not only a right but a remedy vouchsafed by Section 4 of the Declaration of Rights. See also Florida Forest & Park Service, et al., v. Easton Strickland filed this day.

The order appealed from is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

BUFORD, C. J., concurs specially:

TERRELL, BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., concurs specially.

I concur in the opinion prepared by Mr. Justice Chapman insofar as the same deals with the merits of the claim under consideration. I agree to the conclusion reached in that opinion that the appeal should not be dismissed, but for a different, or an additional, reason, viz:

In the case of Tigertail Quarries Inc., et al., v. Ward, 154 Fla. 122, 16 So. (2nd) 812, in the majority and controlling opinion, it was said:

"The right of appeal from this administrative agency being a purely statutory privilege and not a constitutional right, it is subject to the limitations and restrictions imposed by the statutes which define and create the privilege. Unless the procedure provided by the statutes is substantially complied with (or unless, under the law, the jurisdictional prerequisites to obtaining appellate jurisdiction may be, and are, waived as to the cause, or as to the parties, or as to both) the circuit court is without power to determine the controversy under appellate process."

In that case the point was raised and pressed in the circuit court by motion to dismiss the appeal. In the instant case the power of the circuit court was not questioned in that court but was raised for the first time in the Supreme Court.

When the appeal was filed in the circuit court the matter then became a case at law, (see South Atl. Steamship Co. v. Tatum, 139 Fla. 675, 190 So. 675) and subject to the jurisdiction of the circuit court under the provisions of Section

11 of Article V of our Constitution. The appellee might have then presented timely motion to dismiss on the ground that appellant had failed to exhaust his remedy before the statutory administrative board but this it failed to do and, instead of pursuing that course, it submitted itself and the issues to the jurisdiction of the circuit court and thereby waived all irregularities as to procedure. Thus, this case falls within the exception pointed out in the Tigertail Quarries case as quoted, supra.