201 So.2d 731 (1967)
Clyde V. STEPHENS, Petitioner, Cross-Respondent,
v.
WINN-DIXIE STORES, INC., the Fidelity & Casualty Company of New York, and Florida Industrial Commission, Respondents, Cross-Petitioners.
No. 34131.
Supreme Court of Florida.
January 25, 1967.
On Rehearing May 31, 1967.
*732 Albritton, Sessums & Gordon and T. Terrell Sessums, Tampa, for petitioner, cross-respondent.
John McQuigg, of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for respondents, cross-petitioners.
Patrick H. Mears, Tallahassee, and J. Franklin Garner, Lakeland, for Florida Industrial Commission.
O'CONNELL, Justice.
We have for review by certiorari an order of the Florida Industrial Commission reversing and remanding a compensation order of a deputy commissioner. The precise issue involved relates to the effect that is to be given to certain 1963 amendments to the provisions of the Workmen's Compensation Act relating to claimants who have suffered successive injuries.
In September of 1961, while in the employment of Winn-Dixie Stores, petitioner sustained a back injury that left him with a ten per cent permanent partial disability of the body as a whole, for which he was compensated pursuant to a stipulation agreed to by the parties and approved by the commission. Thereafter, in July, 1963, while in the same employment, the petitioner slipped and fell, re-injuring his back.
After a hearing on petitioner's claim, the deputy commissioner specifically found, inter alia,
"5. That the claimant's second back injury on July 22, 1963 was complicated by and merged with his pre-existing permanent physical impairments resulting from his prior back injury of September *733 19, 1961, * * * to cause a permanent disability that is materially and substantially greater than that which would have resulted from his injury on July 27, 1963, alone; that the aforementioned pre-existing permanent physical impairments were a hindrance or obstacle to employment for the claimant, but were known to the employer and carrier herein prior to the claimant's second back injury on July 27, 1963, so that so far as the claimant is concerned, no apportionment of his permanent disability is required in this case."
Then, on the basis of medical testimony, evidence as to earning capacity, and other relevant factors, the deputy concluded that:
"* * * the claimant has suffered a permanent partial impairment of his wage-earning capacity as a result of his injury on July 27, 1963, to the extent of and equivalent to fifty-five percent (55%) of the body as a whole * * *."
and awarded compensation on that basis.
On review, the full commission recognized that the deputy's holding conformed to the case law construing those sections of the act relating to successive injuries and the application of the Second Injury Fund, especially our decision in Sharer v. Hotel Corporation of America, Fla. 1962, 144 So.2d 813. Nevertheless, the commission reversed the deputy's order, as to the amount of compensation to be awarded, saying:
"It is our view that since the claimant's second injury occurred subsequent to July 1, 1963, the ruling in the case of Sharer v. Hotel Corporation of America, 1962, 144 So.2d 813, allowing the claimant more benefits under the `merger' aspects of the Special Disability Fund law, would not be applicable to accidents occurring subsequent to July 1, 1963, in view of the amendments relating thereto, enacted by the 1963 Legislature. The claimant was paid 10 per cent permanent partial disability for the 1961 injury pursuant to a stipulation and Order, and in considering the claim for the 1963 injury, the deputy should have awarded compensation only for the 1963 injury, including any aggravation thereby caused to the 1961 injury."
While we agree that the 1963 Legislature apparently intended to overturn the decision of this Court in the Sharer case, we cannot agree that the amendments actually accomplished this result. We therefore decide that the result of our decision in the Sharer case, as it interpreted the effect of Sec. 440.15(5) (c) and Sec. 440.15(5) (d) (2) and (5) is still a valid and correct interpretation of the effect of Sec. 440.15(5) (c) and Sec. 440.49(4) as they now exist.
In the Sharer case we recognized that our ruling was contrary to the intent expressed by the 1959 Legislature in ch. 59-13, Laws of 1959, which became Sec. 440.15(5) (d) (5). We also recognize that our holding in this case is contrary to the intent of the 1963 Legislature as expressed in Sec. 440.49(4) (a) and as evidenced by the rearrangement of the sub-sections relating to the Special Disability Fund and the deletion from Sec. 440.15(5) (c) of the words of exception discussed later. We know also that the Sharer decision has been, and this one will be, a source of concern to the Industrial Commission and the legislature. Therefore, we feel obligated to do more than merely reverse the commission on authority of the Sharer decision.
An analysis of the changes made by the 1963 Legislature is necessary.
Prior to the 1963 amendments already adverted to, Sec. 440.15(5) (c), the so-called apportionment section, provided:
"(c) The fact that an employee has suffered previous disability or received compensation therefor shall not preclude him from benefits for a later injury nor preclude benefits for death resulting therefrom; but in determining compensation for the later injury or death his *734 average weekly wages shall be such sum as will represent his earning capacity at the time of the later injury, provided, however, that an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability except as hereinafter provided in paragraph (d) of this subsection." [Emphasis added.]
The 1963 Legislature deleted from the above copied subsection the last nine words, i.e., "except as hereinafter provided in paragraph (d) of this subsection."
Prior to its amendment in 1963, Sec. 440.15(5) (d) contained the provisions relating to the Special Disability Fund. Sec. 440.15(5) (d) (2), referred to in the language of exception mentioned above, read as follows:
"2. Permanent disability after other permanent physical impairment.  If an employee who has a total or partial loss or loss of use of one hand, one arm, one foot, one leg or one eye, or who has other permanent physical impairment incurs a subsequent permanent disability from injury or occupational disease arising out of and in the course of his employment which merges with the pre-existing permanent physical impairment to cause a permanent disability that is materially and substantially greater than that which would have resulted from the subsequent injury or occupational disease alone, the employer shall in the first instance pay all benefits provided by this chapter, but such employer shall be reimbursed from the special disability trust fund created by this paragraph for all compensation for permanent disability paid in excess of that allowed for such injury or occupational disease when considered by itself and not in conjunction with the previous permanent physical impairment." [Emphasis added.]
In 1963 this section was moved becoming Sec. 440.49(4) (c). Although the wording was slightly changed, the material portions, including the emphasized provisions, remain the same.
The statement of legislative intent, which prior to the 1963 amendment appeared as Sec. 440.15(5) (d) (5), was changed only by being moved becoming Sec. 440.49(4) (a). Thus, it became the first portion of the subsection dealing with the Special Disability Fund rather than the last. It reads now, as it read prior to 1963, as follows:

"Legislative intent. It is the purpose of this paragraph to encourage the employment of the physically handicapped by protecting employers from excess liability for compensation for permanent disability when an injury to a handicapped worker merges with his pre-existing permanent physical impairment to cause a greater disability than would have resulted from the injury alone. It shall not be construed to create or provide any benefits for injured employees or their dependents not otherwise provided by this Chapter. The entitlement of an injured employee or his dependents to compensation under this Chapter shall be determined without regard to this paragraph, the provisions of which shall be considered only in determining whether an employer or carrier who has paid compensation under this Chapter is entitled to reimbursement from the special disability fund."
Other changes were made in the provisions relating to the Special Disability Fund, but they are not material to this discussion. Therefore, aside from the deletion from Sec. 440.15(5) (c) of the words "except as hereinafter provided in paragraph (d) of this subsection," the 1963 changes were only a rearrangement of the pertinent provisions relating to the Special Disability Fund.
In the Sharer case we necessarily utilized the words of exception then contained in Sec. 440.15(5) (c) in holding that the *735 legislative intent expressed in then Sec. 440.15(5) (d) (5) did not overrule the provisions of then Sec. 440.15(5) (d) (2) providing for reimbursement of excess compensation for merged injuries. But the words of exception were not the basis of our holding, they only aided it. As we explained in Sharer, if the view argued for by the employer and the commission in that case, and in this one, were adopted an employee would always be limited to receiving compensation for the result of a second injury standing alone. The employer would never be called upon to pay any "excess" compensation, and therefore "* * * the very purpose for which the Special Disability Fund was created would be disannulled * * *." The employer would never be entitled to reimbursement from the fund because he would never have paid any "excess" compensation.
Despite the removal of the words of exception from Sec. 440.15(5) (c), and the rearrangement of the other subsections, we still have the same situation that we had in the Sharer case. The basic problem arises out of an apparent conflict between existing Sec. 440.49(4) (c) which authorizes reimbursement to employers for compensation that Sec. 440.15(5) (c) provides they will never pay to injured employees. The only way this conflict can be reconciled without rendering Sec. 440.49(4) inoperative is to hold as we did in the Sharer case. Otherwise we would have to say that in adopting the provisions establishing the Special Disability Fund the legislature did a purposeless and useless thing.
Further discussion of the interrelation between apportionment and the theory of reimbursing an employer for payment of "excess" compensation through a second injury or special disability fund is necessary to understand fully the conflict and inconsistency in the pertinent sections of our statute. Assuming that a state has no special disability fund, the problem of dealing with successive injuries may be met in one of two ways. In the so-called "full responsibility" jurisdictions the injured employee receives full compensation for the combined disability of the merged injuries, and the full burden of paying that compensation is placed on the employer in whose employ the employee was last injured. Cody v. Lewis & West Transit Mix, 1960, 186 Kan. 437, 351 P.2d 4; Colorado Fuel and Iron Corp. v. Industrial Commission of Colorado, 1962, 151 Colo. 18, 379 P.2d 153. The other way of handling this problem is found in the so-called "apportionment" jurisdictions. Under the latter method the resulting disability is apportioned between the successive injuries, the employee receiving and the employer paying only that compensation due for disability resulting from the latter injury standing by itself. Larson's Workmen's Compensation Law, Sec. 59.20.
It is apparent that the risk of a second injury to an already handicapped worker has a very different incidence in an "apportionment" state than it does in a "full responsibility" state. In the former the risk of increased disability resulting from a merger of successive injuries is borne and suffered by the employee who receives only compensation due to the last injury considered alone. In the "full responsibility" jurisdictions the employer initially bears the risk paying the employee compensation for the disability resulting from the combined injuries.
Because of this difference in incidence of the risk of second injury under the two different methods, it follows that the purpose of a second injury or special disability fund must be totally different in a state following the "apportionment" method than in one using the "full responsibility" plan.
In a "full responsibility" jurisdiction the promise of a special disability fund to relieve the employer of the risk of increased disability which is likely to result from a second injury to an already handicapped worker may well operate to encourage employers to hire handicapped workers. But this cannot be the purpose and effect of such a fund in an "apportionment" state. Since the employer is required to compensate the employee only for the result of the *736 second injury considered alone it matters not to the employer whether the second injury merges with a pre-existing physical impairment to cause greater disability. Nor would it matter to the employer that a special disability fund existed or not. It would offer him nothing. Such being the case it is difficult to understand how it can be said that a special disability fund encourages the hiring of handicapped workers in a state which apportions the result of successive injuries. In such a jurisdiction the only purpose and effect that such a fund can serve is to aid the successively injured employee by relieving him of the harshness of the apportionment provision, i.e., to give him compensation for all the disability resulting from the merger of successive injuries. If this is not the purpose of the fund in an "apportionment" state it can have none.
Florida is, of course, an apportionment jurisdiction. Sec. 440.15(5) (c), as previously construed by the commission, places none of the risk of increased disability resulting from successive injuries on the employer. Therefore, our apportionment section and the reimbursement section can only be applied as alternatives, and in this sense the second injury fund provision must be a source of benefits.
Even more compelling toward the same conclusion is the fact that the statutory formulas for apportionment and for reimbursement from the fund are expressed in substantially identical language. Sec. 440.15 (5) (c) provides that the successively injured employee shall not receive compensation "in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability." Sec. 440.49(4) (c) authorizes reimbursement to the employer for all compensation paid "in excess of that allowed for such injury or occupational disease when considered by itself and not in conjunction with the previous permanent physical impairment." Whatever construction is given to this language in one part of the statute would necessarily also apply to the same phrase appearing in another section of the same statute.
It clearly appears, therefore, that the reimbursement to the employer must be for the same amount that the apportionment provision, if operative, would otherwise have withheld from the employee. In other words, the two sections can only be applied as perfect alternatives.
On the basis of the foregoing and under our statutory plan, our special disability fund provisions cannot accomplish the purpose of encouraging the hiring of handicapped workers, the legislative intent expressed in Sec. 440.49(4) (a). If the legislature wishes this purpose to be accomplished statutorily, it can do so in one of two ways: (1) by repealing the apportionment provision outright; or (2) amending the apportionment provision to place on the employer some of the risk of increased disability arising out of merger of successive injuries so that, in those cases in which applicable, the fund provisions would operate to reimburse the employer for the excess compensation paid by him to the employee.
From what we have said we think it is obvious that it cannot be logically argued, as respondents do, that our special disability fund provisions are designed to encourage the hiring of handicapped workers, and are not a source of benefits for employees, but only authorize reimbursement to employers for "excess" compensation. Unless these provisions be construed to be a source of benefit they have no meaning whatsoever.
Because we have rejected the commission's construction of the apportionment section in its relation to the fund provision we fell obligated also to discuss Sec. 440.15(5) (c).
At the outset we cannot pass the opportunity to point out the incompatibility between any apportionment provision and the basic theory of workmen's compensation, which is to reimburse injured employees for loss of wage earning capacity *737 occasioned by industrial accidents. Since compensation for a second injury is measured by the loss only of that wage earning capacity which the employee had at the time of the injury sought to be compensated, it would seem that the influence of any previous injury, impairment or disability would usually be reflected in a lessened wage earning capacity at the time of the second injury. Such pre-existing condition must be either disabling or not at the time of the second injury. If disabling, it must have had the effect of reducing the employee's earning capacity, in which case there seems to be no justification for again charging its effect to the employee through apportionment. If, on the other hand, the pre-existing impairment was not disabling at the time of the second injury, there seems to be no logical reason why it should be apportioned. Further, the theory of apportionment is diametrically opposite to the injunction that "the employer takes the employee as he finds him." As do most jurisdictions, we have long followed and never rejected this principle. Davis v. Artley Const. Co., 1944, 154 Fla. 481, 18 So.2d 255; Alexander v. Peoples Ice Company, Fla. 1955, 85 So.2d 846, and like cases.
We recognize, of course, that the residual effect of a first injury, although not disabling at the time of a second one, may well contribute to the extent of the disability following the second injury. This fact, however argues not for apportionment, but for a special disability fund which will protect the employer against payment of "excess" compensation, yet not deny the employee compensation for his loss in earning capacity, measured by the difference in that capacity at the time of the second injury and at the time the award is made.
Sec. 440.15(5) (c) was enacted in 1955 as part of the same amendment that introduced the special disability fund provisions to the statute. Chapter 29778, Laws of Florida, 1955. This subsection is susceptible to at least three different constructions as to the basis for awarding compensation: (1) award compensation only for the disability which would have resulted from the last injury had the earlier injury never occurred; (2) award compensation for all the disability existing after the second injury, less, however, compensation for the percentage of disability compensated for in an earlier award; or (3) award compensation for all the disability existing after the second injury, less only compensation for the percentage of disability manifesting itself at the time of the second injury and continuing to exist at the time the award is made. We shall discuss these alternative constructions in order.
The first construction, which would allow compensation only for disability which would have resulted from the second injury had the earlier one not occurred, seems at first glance to be most consistent with the wording of the section, read literally. It appears to be the one argued for by the commission in the Sharer case, and therefore the one intended to be restored by the 1963 amendments. Also see City of Miami Beach v. Fla. Ind. Comm., Fla. 1958, 105 So.2d 885. This construction runs counter to the oft-repeated rule that the act must be construed most liberally in favor of the claimant. Further, it leaves no room whatsoever for operation of the oft-affirmed and never-repudiated maxim that the employer takes the employee as he finds him.
It is probable, too, that the first construction would impose a heavier burden on the special disability fund than was intended. Since reimbursement from the fund must always be the amount that would have been denied claimant under the apportionment section, the smaller the amount attributed to the second injury alone, the greater the amount the fund will be required to reimburse to the employer.
Finally, the first construction denies recognition of the fact that successive injuries may merge and result in disability greater than the sum of that which would have resulted from the two injuries *738 taken alone. True, the claimant would receive compensation for his entire disability whenever the fund provision rendered the apportionment provision inapplicable. This would be true under all three constructions. But under the first construction, the apportionment provision, when applicable, would prohibit any compensation for the increased disability resulting from the operation of the two injuries on each other.
The second construction, which would deduct only the disability already compensated for, does permit recognition of the merger of the two injuries. Although its choice of language suggests some confusion with apportionment under 440.02(19), the commission appears to be arguing for the second construction in the present case. In its order the commission stated that "in considering the claim for the 1963 (i.e. the latter) injury, the deputy should have awarded compensation only for the 1963 injury, including any aggravation thereby caused to the 1961 injury." [Emphasis added]. This formula stated by the commission would be consistent with the second construction.
This construction is also objectionable because it negates in large part the rule that the employer takes the employee as it finds him. Furthermore, while it permits compensation for merger effect it ignores the fact that disability resulting from the first injury may have been completely overcome or substantially diminished by the time of the later injury. This construction would violate our decision in Dennis v. Brown, Fla. 1957, 93 So.2d 584, in which we quoted Larson, Sec. 59.43:
"The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a man has once received compensation as for 50% of total disability does not mean that ever after he is in the eyes of compensation law but half a man, so that he can never again receive a compensation award going beyond the other 50% of total. After having received his prior payments, he may, in future years, be able to resume gainful employment. If so, there is no reason why a disability which would bring anyone else total permanent disability benefits should yield him only half as much."
We reach the third construction under which disability attributable to an earlier injury would be apportioned out of an award only to the extent that it existed at the time of the second injury and continued to manifest itself at the time the award is made. There are compelling reasons for adoption of this construction.
This construction allows the apportionment provision a reasonable and logical area of operation, accords with the rule that the statute must be construed most liberally in favor of the workingman and is most consistent with the maxim that the employer takes the employee as he finds him.
The third construction is also strongly indicated by the language of the apportionment section. The first clause of the section merely guarantees that the fact that an employee has suffered previous disability does not preclude compensation for a later injury. The second clause simply provides that compensation will be awarded on average weekly wages which are representative of earning capacity at the time of the second injury. Unless this statement was intended to emphasize that wages paid by a charitable employer in sheltered employment shall not be considered as the actual earning capacity of the employee it adds nothing to the method of computing compensation provided in Sec. 440.14. The third clause in the section is the critical one. It reads "provided, however, that an employee who is suffering from a previous disability shall not receive compensation for a later injury when in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability." The "is suffering" of the last clause must be closely compared with the "has suffered" in the fist clause providing *739 that a second injury is compensable. If the framers had intended this section to be construed as the commission urged in Sharer, it would seem logical that the words "has suffered" would have been employed instead of "is suffering." We think the significance of this is that the apportionment was to be limited to the extent of the disability which was manifesting itself at the time of the injury and continued to do so at the time of the award.
It is also significant that the statutory limitation on compensation payable shall not be in excess of that allowed for the "later injury * * * when considered by itself and not in conjunction with the previous disability." (Emphasis added). If it were intended, as the other two constructions would do, to exclude all compensation paid for the earlier injury, it would be expected that the final words in the section would read "and not in conjunction with the the previous injury" rather than the "previous disability." The word "injury" would more clearly signify the compensation previously paid. "Disability," while actually the factor previously compensated, is something logically expected to diminish with the passage of time. Hence, reference to compensation for a later injury considered by itself and not in conjunction with the previous disability, strongly suggests that only the degree of disability resulting from the first injury which remains at the time of the second one and at the time of the award is to be apportioned out of the award.
Another fact also operates in favor of the third construction. Prior to the 1955 amendment which enacted the special fund provision and the apportionment provision, Sec. 440.15(5) (b) provided, as it does now, that when previous and subsequent injuries resulted in permanent total disability, compensation for permanent total should be paid. However, the earlier version contained a proviso, deleted in 1955, that "payments made for the previous permanent injury shall be deducted from the total payment of compensation due."
This deletion, on its face, would appear to mean that the legislature intended that such previous payments were no longer to be deducted. It might, however, be reasoned that the provision was deleted in the expectation that the same result would be achieved under the new Sec. 440.15(5) (c), enacted at the same time. But this result would be achieved only if the apportionment section were given the first construction above discussed, i.e., award compensation only for the disability that would have existed had the earlier injury never occurred. As indicated above there is good reason to believe the legislature never intended this construction. Therefore, the more logical inference to be drawn is that the legislature deleted the quoted provision from 440.15(5) (b) because it would have been inconsistent with the new 440.15(5) (c) enacted at that time.
The last reason in support of the third construction of Sec. 440.15(5) (c), which construction we adopt, is that it is most consistent with the other apportionment section, 440.02(19), relating to pre-existing disease, which has been in the statute from its enactment in 1935. From that time up through and beyond the adoption of 440.15(5) (c) now under consideration, Sec. 440.02(19) had been construed as requiring apportionment of only that portion of disability that existed at the time of the accident. See Allen v. Maxwell Co., 1943, 152 Fla. 340, 11 So.2d 572; Davis v. Artley Const. Co., 1944, 154 Fla. 481, 18 So.2d 255; Borden's Dairy v. Zanders, Fla. 1949, 42 So.2d 539. Considering the philosophy and theory of workmen's compensation, there seems to be no logical reason to treat pre-existing disability resulting from injury any differently than pre-existing disability resulting from disease or other congenital defect. Further support for the idea that the two apportionment provisions were intended to have parallel application is found in the language of the special disability fund provision, enacted simultaneously with 440.15(5) (c). The language "physical impairment" was obviously made sufficiently *740 broad to encompass the subject matter of both apportionment provisions, i.e., pre-existing disability from disease as well as from injury.
Larson, in Sec. 59.20 of his work, gives support to the view we adopt, saying:
"to be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident."
In this discussion of the interrelation and inconsistency existing between our apportionment and special disability fund provisions we have been what may be unforgiveably prolix. However, if what we have written brings about a clearer understanding of the problems these conflicting sections present and aids the commission and the legislature in removing and/or correcting them we will then hope to be forgiven.
We have considered all other questions raised by the petition and cross-petition and find them to be without merit.
The petition is granted, the order of the Full Commission quashed and the cause remanded with instructions to enter an order reinstating the order of the deputy.
It is so ordered.
THORNAL, C.J., ERVIN, J., and TROWBRIDGE, Circuit Judge, concur.
THOMAS, ROBERTS and CALDWELL, JJ., dissent.

ON PETITION FOR REHEARING GRANTED.
O'CONNELL, Justice.
To our opinion filed in this cause on January 25, 1967 the employer-carrier and the commission, on behalf of the Special Disability Fund, have filed petitions for rehearing.
The employer-carrier accepts the statements of law announced in our opinion. They argue only that instead of ordering reinstatement of the deputy's order we should have directed remand of the cause for a determination of whether any of claimant's disability was apportionable under the formula adopted in our opinion. We agree that this should be done so that the employer-carrier's resort to the Special Disability Fund may be clarified.
The petition of the commission contends that our earlier opinion herein had the effect of imposing responsibilities on the Special Disability Fund in a proceeding to which it was not a party. The commission argues that this denies the "Fund" its day in court and nullifies the provisions of the statute which require that claims against the "Fund" be litigated on the claim of the employer-carrier in a separate proceeding. As will be explained later although our principal opinion did not in terms so hold, we must acknowledge that its practical effect is as petitioner asserts.
We decided two things in the decision toward which these petitions for rehearing are directed: (1) that the apportionment provision of Sec. 440.15(5) (c) and the reimbursement provision of Sec. 440.49(4) (c) are perfect equivalents and can only be applied as alternatives; and (2) that the apportionment provision of Sec. 440.15(5) (c), when applicable, requires that there be apportioned out of the award for disability only the amount of compensation for the percentage of disability resulting from the first injury that was still "manifesting itself at the time of the second injury and continuing to exist at the time the award is made."
The first of these holdings was in direct response to the express holding of the commission that the 1963 amendments to the statute discussed in our earlier opinion had the effect of nullifying the rule of Sharer v. Hotel Corporation of America, Fla. 1962, 144 So.2d 813. We now perceive that our decision focused so sharply *741 upon this task of rebutting the conclusions of the full commission that we neglected to explain properly why we even went on to the second question decided by our decision herein. Thus, it was not sufficient to say,
"Because we have rejected the commission's construction of the apportionment section in its relation to the fund provision we feel obligated also to discuss Sec. 440.15(5) (c)."
Rather, we should have made it clear that we were turning to that question because our disposition of the first question made it essential that in every case involving successive injuries, there must hereafter be an express finding as to apportionability. If the special fund provisions can only apply as an alternative to the apportionment provision  and we so held  the questions of whether they apply and to what extent can only be decided after the apportionability of disability remaining from the first injury has been determined. If the deputy determines that there is no residual disability from the first injury to be apportioned, the Fund does not become involved at all. If, on the other hand, the deputy concludes that there is residual disability from the first injury that should be apportioned out of the award, then the Fund may or may not be involved, depending upon whether the statutory prerequisites for its application are present.
It follows, therefore, that unless we could hold as a matter of law that some portion of this claimant's total disability was or was not apportionable under Sec. 440.15(5) (c), we should have ordered remand of the cause for appropriate findings by the deputy. Since it is obvious that there was no basis for our so holding, we therefore amend our earlier opinion and remand the cause to the deputy for such further proceedings as are necessary to his determining this issue in light of that opinion.
Although our granting of the employer-carrier's petition for rehearing may well have rendered premature the questions raised in the commission's petition, we shall deal with them here on the theory that they will inevitably arise later in this cause.
As previously indicated, the Fund's first and principal contention is that our decision denies effect to those provisions of the statute that require the proceedings for reimbursement under Sec. 440.49 to be separate from the adjudication of the claim for compensation, that facts found in the latter proceeding are not res judicata in the proceeding for reimbursement, that the Fund shall be a party to the latter proceeding, and so forth. As already indicated, this contention is substantially true. There is no reason why the statutory requirement that reimbursement from the fund be granted only on a claim filed by the carrier should not be given full effect. However, under the theory we have adopted, the other provisions referred to can be given full effect only at the cost of nullifying the effect of the second injury fund.
The weakened effect of the statutory provisions concerning independent reimbursement procedures is explained by the fact that, as a practical matter, the determination of the "excess compensation" which the employer is required to pay must be made at the time the claim for compensation is adjudicated. The Fund's obligation can only arise after the claimant has been awarded compensation for disability due in some way to an earlier injury that would otherwise have been apportioned out of the award under Sec. 440.15(5) (c). The obligation for this "excess compensation" cannot ultimately be that of the employer for the very reason that it is apportionable. If it is not the purpose of the fund provisions to reimburse the employer for the "excess compensation" required to be paid in the award then it has none. Further, unless the excess is ordered paid in the award on the employee's claim he *742 never receives it and there is no reason for a claim for reimbursement.
We shall touch only briefly on the remaining points contained in the Fund's petition for rehearing. The statement is made: "Sec. 440.15(5) (c) has no application in this case." This is difficult to understand for a number of reasons. It is certainly true that the commission's decision in this same case turned on the assumed effect of the 1963 amendments, one of which was to this precise section and both of which purported to relate to the inter-relationship between Sec. 440.15(5) (c) and the provisions relating to the Fund.
It is true that the commission made a confused reference containing the "aggravation" language of the other apportionment provision. F.S. Sec. 440.02(19) F.S.A. However, this is hardly sufficient to substitute the one section for the other as the relevant section. Again, there is no question but that the Sharer decision focussed on the relationships between Sec. 440.15(5) (c) and the Fund sections, and the continued vitality of the Sharer case was the principal question before us here. In any event, we think that our decision in Young v. Dreamland Bedding Co., Fla. 1961, 133 So.2d 414 established for all time the distinction between the two apportionment provisions. Secs. 440.02(19) and 440.15(5) (c).
At another place, the Fund makes the statement that our ruling "would have the effect of compensating the claimant anew for an injury which had been settled previously under joint petition." We would not state the result so dramatically. When the fund provision is applicable, it merely releases the claimant from the operation of the apportionment provision and transforms Florida into a "full responsibility" state for that particular case. However, the Fund relieves the employer of the added financial burden.
In its petition, the Fund seizes upon our admission in Evans v. Florida Industrial Comm. (Davis Grove Service) Fla., 196 So.2d 748, opinion filed on February 1, 1967, that there was some difference in wording between our Sec. 440.02(19) and the corresponding section of the California statute. Actually, what we were saying was that the California provision was better drafted than is ours, that it succeeded in saying what ours must have been intended to say. In any event, the language of the two sections is quite similar, and the California precedents are correspondingly relevant.
The Fund's petition for rehearing purported to find confusing conflict between our statements that Florida was an apportionment state and that we adhered to the maxim that the employer takes the employee as he finds him. For one thing, since the two statements are not mutually exclusive, they are not necessarily in conflict. Thus, although we observed in the instant opinion that the very principle of apportionment was in inherent conflict with the stated maxim, we did go on and adopt a construction of the apportionment provision that would lend some vitality to the maxim. Of course, the actual basis for this continued vitality under our holding is the very real distinction between residual disability, which is apportionable, and residual predisposition to re-injury, which is not. To the extent that a latent predisposition to injury, whether resulting from disease or from an earlier injury, escapes the operation of the apportionment formula, it can certainly be said that the subject maxim is being honored.
The Fund's petition for rehearing contains two other statements, one apparently expressly disagreement with our basic holding in the instant case, and the other implying that there is some inconsistency between our decision in the Evans case, supra, and the instant case. However, no attempt was made to explain either of them, so it is impossible for us to respond further.
Our earlier opinion is modified to the extent that the cause is remanded to the *743 deputy to determine what part, if any of the claimant's disability was due to the 1961 injury so that the employer-carrier's resort to the Special Disability Fund may be decided.
It is so ordered.
THORNAL, C.J., and ROBERTS and ERVIN, JJ., concur.
TROWBRIDGE, Circuit Judge, concurs in part and dissents in part with Opinion.
THOMAS and CALDWELL, JJ., dissent.
TROWBRIDGE, Circuit Judge (concurring in part and dissenting in part):
I adhere to the original opinion and instructions upon remand.
The deputy commissioner in his order found that the claimant's second injury was complicated by and merged with his pre-existing permanent physical impairments resulting from his prior back injury to cause a permanent disability that is materially and substantially greater than that which would have resulted from the second injury alone. He further found that the pre-existing permanent physical impairments were a hindrance or obstacle to employment for the claimant, were known to the employer and carrier prior to the second injury and, that, therefore, no apportionment is required.
This language meets the test of Sharer v. Hotel Corp. of America, 144 So.2d 813 (Fla. 1962), which we held in our original opinion is still a valid and correct interpretation of the law, and of § 440.49(4) (c).
Under these circumstances the claimant should be paid for the full disability, there should be no apportionment, and the employer-carrier should make subsequent application to the special disability fund.
The petition of the commission which argues that responsibilities have been placed upon the fund without giving it a day in court should be denied for the simple reason that the fund, not being a party to this cause at this point, has not suffered any determination binding upon it. Section 440.49(4) (g) makes this clear.
It may seem illogical to require the issue of merger v. apportionment to be relitigated between the employer-carrier and the fund, but that is the requirement set by the legislature. Certainly, it is apparent that Chapter 440 as it presently applies to the special disability fund is not logically consistent and deserves the attention of the legislative body.