ERVIN, Chief Justice
(dissenting):
The Judge of Industrial Claims, with the Commission affirming, appears to have improperly apportioned out of claimant’s compensation benefits a percentage for a non-disabling prior disease or condition, which prior to the injury had not affected his wage earning capacity as a manual laborer. This apportionment was made contrary to the decisions in Evans v. Florida Industrial Commission (Fla.), 196 So.2d 748, and Stephens v. Winn-Dixie Stores, Inc. (Fla.), 201 So.2d 731, and other cases.
From the record it appears that for three years prior to his compensable back injury in this case claimant Lane never had a day of trouble with his back. He had no trouble executing the routine physical maneuvers such as bending, stooping and lifting required in his work. He never missed a day of work during such period as a warehouseman, storing produce, as a gardener and, finally, in the last six months, working as a manual laborer digging holes, breaking iron and using air compressors for employer.
None of the medical testimony received from Drs. Gregory or Nadler, or any other evidence, in anywise contradicted Lane’s claim that until the subject injury he was in no way disabled from doing the normal work he testified he did during the three years immediately preceding such injury. After the injury on August 1, 1967, Dr. Nadler testified claimant “could only bend forward thirty degrees; backward left and right, zero with marked spasm, tenderness and pain across the fourth lumbar level with radiation of pain to both flanks. And outside of the left leg, left foot, he said he had frequent numbness and tingling in that left leg.”
It is true Dr. Gregory testified that he would have given claimant a 25 per cent to 30 per cent permanent partial disability rating prior to the accident because claimant had degenerative hips and curvature of the spine with degenerative and hypertrophic arthritis of the spine. However, Dr. Gregory never saw claimant before the accident. The work history of claimant before the accident as related was that he was able to engage in heavy manual labor. After the accident, according to Dr. Gregory’s testimony, claimant will have trouble finding any employment.
*21 Accepting as correct Dr. Gregory’s opinion based on an examination of claimant after the compensable accident that claimant had a degenerative back and arthritic condition and that he would have given him a 25 to 30 per cent permanent partial disability prior to the accident, nevertheless all of the evidence was to the effect claimant was able prior to the accident to do a full day’s work at manual labor. After the accident of August 1, 1967 he was no longer able to do such work. Therefore, how can it be found in harmony with logic and reason that all of claimant’s difficulties, save 5 per cent permanent partial disability, is attributable to the normal progress of the pre-existing degenerative disease ascribed in the medical findings and opinion of Dr. Gregory, and that these difficulties would have existed had the accident never occurred. Even if the anatomical rating of 5 per cent permanent partial disability is correct, how can Lane’s loss of wage earning capacity which, according to the testimony, is manifested by a complete loss of ability to find employment in the manual labor field, be calculated on the basis of only 5 per cent similarly as his anatomical rating ?
It is noted that the Judge of Industrial Claims in his order seeks to avoid the implication he took into consideration Dr. Gregory’s rating of 25 to 30 per cent preexisting permanent partial anatomical disability by reciting in his order: “That as a result of said injury the claimant has suffered permanent partial disability as follows: 5% of the body loss of earning capacity. Claimant’s pre-existing arthritis was not aggravated by the industrial accident.” However, this language cannot be read in isolation from the record evidence pertaining to the ratings opined by Dr. Gregory. The curious language, “5% of the body loss of earning capacity,” seems confusing on its face and nowhere appears in the testimony of Dr. Gregory. Dr. Gregory testified the injury caused claimant an additional permanent partial anatomical impairment of 5 per cent to his pre-existing disease which he anatomically rated at 25 to 30 per cent. Dr. Gregory admits that since the accident claimant is only able to perform “sheltered employment.” The Judge in finding “5% of the body loss of earning capacity,” relates it to nothing in the record save Dr. Gregory’s additional anatomical disability rating of 5 per cent.
It is apparent the orders of the Judge and the Commission are in no way based on competent substantial evidence in that they do not logically translate claimant’s injury, whatever the anatomical rating, in terms of loss of wage earning capacity. Prior to the injury claimant was earning wages comparable to the wages earned by manual laborers. After the injury he was not able to work as a manual laborer. The order of the Commission fails completely to take into consideration the principles set forth in Ball v. Mann (Fla.), 75 So.2d 758, and also is contrary to the rationale of the following cases: Stephens v. Winn-Dixie Stores, Inc. (Fla.1967), 201 So.2d 731; Robinette v. E. R. Jahna Industries, Inc. (Fla.1968), 208 So.2d 104; Direct Oil Corporation v. Coleman (Fla.1968), 216 So.2d 193; Genereux v. Caribbean Concessions, Inc. (Fla.1968), 211 So.2d 1; Fisher v. Carroll Daniel Fisher Construction Company (Fla.1968), 212 So.2d 289; Crotts v. Montgomery Ward and Company (Fla.1968), 208 So.2d 97, and Holloway v. Curcie Brothers, Inc. (Fla.1967), 203 So.2d 499.
It is quite apparent from this record that Lane’s injury falls into a category resulting solely from the accident or from acceleration of aggravation of his pre-existing disease or condition by the accident, and not from the normal progress of the pre-exist-ing disease. I would reverse and remand the cause for findings consistent with application of the foregoing views.