ROBERTS, Justice.
We here review on certiorari an order of the Industrial Commission in a workman’s compensation case, affirming a compensation award of the Judge of Industrial Claims based on total permanent disability.
The claimant was a disabled veteran, having sustained war injuries requiring am--putations of the right hand and left leg. The injuries were, of course, known to the employer. The industrial accident sustained during the course of his employment resulted in a 25% functional disability of his right knee, causing it to “buckle” unexpectedly. The Industrial Judge found that the industrial accident merged with his previous disabilities, resulting in materially and substantially greater disability and diminution of wage earning capacity than would have resulted solely from the industrial injury, and that the claimant was totally and permanently incapacitated from a wage-earning point of view. His award was affirmed by the Full Commission.
*355 It is here contended on behalf of petitioners, the employer and its insurance carrier, that it was error to find that the claimant was totally and permanently disabled when the evidence showed that he was able to do only sedentary work at the time of his employment, that he is still able to do the same type of work, and that this type of work was available on the open market and had been offered to the claimant. In support of this contention the testimony of one William Reilly, an investment counselor, is relied upon. The testimony of Mr. Reilly is summarized by counsel for petitioners as follows:—“Through the testimony of Mr. Reilly Petitioners established that at least five such jobs are presently open and available to the claimant if he chooses to accept them, although he failed to keep three scheduled interviews with these prospective employers.”
The impression conveyed by this summation of Mr. Reilly’s testimony is, of course, that the claimant wilfully or negligently failed to follow up on job oppor-tunites that were available to him. The record does not support this conclusion. What Mr. Reilly actually said was that he had scheduled the interviews but that he “didn’t have a chance” to pass the information on to the claimant. That he was not too sanguine of the claimant’s chances for successful employment is evidenced by the following testimony:
“Q. Mr. Reilly, since 1958 have you ever placed or been in luck in referring to someone else to [place] any bilateral amputee who also had a leg disability of locking and buckling ?
“A. No, sir.”
There was competent substantial evidence to support the conclusion of the Industrial Judge that the claimant was totally and permanently disabled insofar as his wage-earning capacity was concerned; and his findings of fact upon which this conclusion was based are sufficient to meet the requirements of Brown v. Griffin, Fla. 1969, 229 So.2d 225, and cases cited. Accordingly, we find no error here.
It is also contended on behalf of petitioners that Section 440.15(5) (c), Fla. Stat., F.S.A., required the Industrial Judge to “apportion out” of the award that portion of the overall disability attributable to the pre-existing permanent physical impairments, citing Stephens v. Winn-Dixie Stores, Inc., Fla.1967, 201 So.2d 731. Since the statute relied upon in support of this contention purports to limit a claimant to compensation only for the subsequent injury “when considered by itself and not in conjunction with the previous disability,” it is clear that counsel for petitioners has misinterpreted our decision in Stephens and similar cases. When, as in this case, the employer is aware of the previous disability of the employee, the Special Disability Fund provisions of the Act, Section 440.49 (4) (c), Fla.Stat, F.S.A., come into play; and when, also as in this case, the subsequent injury merges with the previous disability to be totally and permanently disabling, the responsibility of the employer is, as stated in Steele v. Pendarvis Chevrolet, Inc., Fla.1969, 220 So.2d 372, to “pay permanent, total disability to the claimant and look to the Special Disability Fund for that portion of the loss of wage earning capacity which is attributable to the preexisting disease.”
It is only where a portion of the ultimate disability existing after a subsequent accident is sustained by an employee who had a pre-existing disease or condition can, in fact, be attributed to the normal progress of the pre-existing disease or condition, which progressively disabling condition would have occurred even though the aggravating industrial accident had not happened, that a portion of the compensation may be “apportioned out” of—that is, deducted from—the amount of compensation that would otherwise be payable to the claimant on the basis of the ultimate disability found to exist in these circumstances. See Evans v. Florida Industrial • *356 Commission, Fla. 1967, 196 So.2d 748. There is nothing in the record here to indicate that the pre-existing disability of the claimant was of this type, nor is such a contention made. Accordingly, the contention on behalf of the petitioners that some portion of the award should have been “apportioned out” of — in the sense of deducted from — the compensation payable to the claimant cannot be sustained.
The order here reviewed is, accordingly, approved. The question of the portion of the award for which the Special Disability Fund should stand liable and reimburse the employer will, of course, be determined in appropriate proceedings in accordance with the provisions of Section 440.49(4) (g), Fla.Stat., F.S.A.
Therefore petition for certiorari is denied.
ERVIN, C. J., and DREW, THORNAL and BOYD, J J., concur.