ERVIN, Justice.
In these consolidated cases two workmen’s compensation insurance carriers, *674 Hartford Accident and Indemnity Company and Aetna Casualty and Surety Company, seek reimbursement from the Special Disability Fund (see F.S. Sections 440.49 and 440.50, F.S.A.) of a portion of the compensation benefits they paid an employee, one Fred Hunt.
Fred Hunt was injured in three separate accidents while employed by the City of Hialeah. The accidents occurred .February 20, 1958; November 10, 1959, and September 26, 1962. The workmen’s compensation carrier for the City at the time of the first two accidents was Aetna; the carrier when the third accident occurred was Hartford.
Following the first accident, Deputy Commissioner Abrams found that Hunt sustained chronic sprains to the neck and spine and postconcussion headaches. He further found that Hunt had a 15 per cent permanent partial disability of the body as a whole and a 14 per cent loss of wage earning capacity.
Deputy Commissioner Teller in his order of April 29, 1964 relating to the second and third accidents appears to hold the view the two compensation carriers for the City 'of Hialeah might look to the Special Disability Fund for reimbursement. He stated in his order:
“ * * * I have apportioned said disability to the three accidents as follows: As a proximate result of the first accident of February 20, 1958, I specifically find that the Claimant has sustained a 14% permanent partial disability of the body as a whole and a 14% loss of wage earning capacity. As a result of the accident of November 10, 1959, I specifically find that the Claimant has sustained a 28% loss of wage earning capacity. As a proximate result of the accident of September 26, 1962, I specifically find that the Claimant sustained a 28% permanent partial disability of the body as a whole and a loss of wage earning capacity in the amount of 28%. I specifically find that said loss of wage earning capacities are specific, direct and proximate results of said accidents, to which I have made said apportionment.
“(12) I specifically find, therefore, that the Claimant is entitled to permanent partial disability compensation benefits in the amount of 56% of the body as a whole, payable from the Carrier, AET-NA CASUALTY & SURETY COMPANY and HARTFORD ACCIDENT & INDEMNITY COMPANY, equally, with said payments accounting from the date of the maximum medical improvement of March 12, 1963, as aforesaid. This Order does not adjudicate the rights of the respective Carriers in relation to the Special Disability Fund under Section 440.15 of the Florida Statutes. * * * ” (Emphasis added.)
When Judge of Industrial Claims Harrington heard the reimbursement claims of the two carriers brought directly against the Special Disability Fund, he found in his order of July 1, 1969 that as a result of the second injury to Fred Hunt in the accident of November 10, 1959, claimant’s permanent physical impairment increased from 10 per cent to 20 per cent of the body from the pre-existing condition resulting after the first accident of February 20, 1958
“and merged with this pre-existing physical impairment to cause a greater disability than would have resulted from the injury of November 10, 1959 alone * * * that therefore the [second] accident caused one-half or 14% of the 28% disability awarded as a result of the accident of November 10, 1959 and that the 14% is a magnification of the preexisting disability * * *”
From this finding he concluded Aetna had paid a 14 per cent permanent partial disability of the body as a whole, greater than the disability that would have resulted from the accident of November 10, 1959 standing by itself. An identical finding was made by Judge Plarrington in behalf *675 of Hartford in reference to the third injury to Fred Hunt sustained in the accident of September 26, 1962.
The Industrial Relations Commission, in reversing Judge Harrington, points out: That Deputy Commissioner Teller in his April 26, 1964 order found Hunt’s overall permanent partial disability was 70 per cent based on loss of wage earning capacity, but the two carriers were not ordered to pay 70 per cent. That the deputy apportioned out 14 per cent permanent partial disability from the total award because of the first accident of February 20, 1958. That accordingly the two carriers were each ordered to pay 28 per cent permanent partial disability, or 56 per cent total, which was the amount attributable to the second and third accidents and their effect on the body as a whole. Therefore, says the Commission, since Aetna and Hartford have each provided only 28 per cent permanent partial disability benefits for the two succeeding injuries rather than benefits for claimant’s total permanent partial disability of 70 per cent, there is, as a matter of law, no basis for finding that any “excess” has been provided the employee by either carrier. The Commission cites in support Stephens v. Winn-Dixie Stores, Inc., Fla., 201 So.2d 731; Kirkman v. Owens-Illinois Forests Products Division, Fla., 197 So.2d 822; Evans v. Florida Industrial Commission, Fla., 196 So.2d 748, and Cypress Gardens Citrus Products, Inc. v. Murchison, Fla., 240 So.2d 803.
We do not find that the Commission’s conclusions are correct as a matter of law. Each case against the Fund requires individual consideration to determine whether any “excess” permanent disability benefits have in fact been provided by employer-carrier. It is true Deputy Commissioner Teller attributed 14 per cent permanent partial disability of the body as a whole and a 14 per cent loss of wage earning capacity to the first injury and similarly a 28 per cent rating for each of the two succeeding injuries totalling 70 per cent. But these ratings per injury were not made preclusive of resort to the Special Disability Fund by the two carriers and Deputy Commissioner Teller expressly so indicated. It remained for the carriers, if they desired, to bring their claims on for “excess” reimbursement adjudication in direct proceedings against the Fund. Cypress Gardens Citrus Products, Inc., v. Murchison, supra.
.Judge Harrington in his order of July 1, 1969 found from uncontroverted evidence that Fred Hunt’s second injury was in the same area of his body as his pre-existing congenital condition, being the area injured by the first accident, and that the second injury merged with the pre-existing physical impairment to cause a greater disability than would have resulted from the second injury standing alone; and that the testimony was that the second accident was “magnified” from between 3 to 7- per cent of the total disability due to that accident and caused an increase of 10 per cent physical impairment. Therefore he found one half of Hunt’s physical impairment due to the second accident was a result of merger of disabilities and caused one half, or 14 per cent, of the 28 per cent disability awarded as a result of the second accident. He made an identical finding in reference to the third accident.
The Commission bases its reversal not directly on the findings of Judge Harrington. Instead, it adverts to the 1964 order of Deputy Commissioner Teller on which to predicate its reversal. But the findings in the 1964 order were not conclusive as to the carriers’ claims for “excess” reimbursement from the Fund. Under the Stephens rationale no apportionments were necessary in the case adjudicated by Deputy Commissioner Teller since it involved Hunt’s claim against employer-carrier (was not a Fund case) and employer had knowledge of Hunt’s pre-existing permanent disability brought on by his earliest accidents. True, a 14 per cent rating was attributed to the first accident and ratings were also given the subsequent accidents by Deputy Commissioner Teller. But in actuality *676 these successive accidents and their resultant injuries did not stand alone but merged to create a greater total disability for which the carriers paid 56 per cent. Judge Harrington considered the total disability of the employee and the interrelation of the three accidents.
The Stephens case and subsequent cases such as Cypress Gardens Citrus Products, Inc. v. Murchison, süpra, do not require initial apportionment in cases between claimants and employer-carriers where the employer has prior knowledge of claimant’s pre-existing permanent physical impairment as prescribed in F.S. Section 440.49(4) (b), F.S.A. However, Deputy Commissioner Teller did not know this when he made the apportionments in his 1964 order since the cases just referred to were decided after 1964.
In Fund cases, apportionment of employer-carrier’s “excess liability * * * when an injury to a handicapped worker merges with his pre-existing permanent physical impairment to cause a greater disability than would have resulted from the injury alone” (F.S. § 440.49(4) (a), F.S. A.) is necessary as a predicate to any reimbursement. See Davis v. Conger Life Ins. Co., Fla., 201 So.2d 727.
In the instant Fund case, Judge Harrington found from the evidence that part of Deputy Commissioner Teller’s 28 per cent ratings of Fred Hunt’s permanent partial physical impairment (which was compensated for by the carriers’ payments) arose from Hunt’s pre-existing permanent partial disability condition which was due in part to a pre-existing congential condition and the previous accident or accidents. Deputy Commissioner Teller made it quite clear in his 1964 order that although he made the three ratings he did not attempt, so far as the two carriers’ liability for the 28 per cent ratings were concerned, to apportion the “excess,” if any, from merger resulting in the greater or total disability. Instead, he expressly stated his order “does not adjudicate the rights of respective carriers in relation to the Special Disability Fund * * *”
It is apparent from both the Teller and Harrington orders that Fred Hunt was an employee of the City of Hialeah during his successive injuries and that his permanent physical disability condition as a result of said injuries had been known at all relevant times by his City employer.
In conclusion, we find no basis for disturbing the uncontradicted findings of Judge Harrington from the evidence concerning the carriers’ “excess” reimbursement. There is no basis as a matter of law for concluding that Deputy Commissioner Teller’s order precluded in a later direct Fund case any finding of “excess liability” protective of the two carriers within the intendment of F.S. Section 440.-49, F.S.A., and particularly subsection (4) thereof.
Insofar as the case of Cypress Gardens Citrus Products, Inc. v. Murchison, supra, appears to hold that unless the employer-carrier compensates the employee for his entire disability which has been made greater by a subsequent compensable injury, it is not reimbursable by the Fund; it is modified to admit of unusual situations of the kind here presented where only a portion of the total disability of employee was compensated for by the carriers. Plere, it was duly ascertained by competent evidence that although the two carriers did not compensate the injured employee for his total permanent partial disability rating of 70 per cent, they did provide some “excess” compensation in paying the 28 per cent disability ratings due to the employee’s pre-existing physically impaired permanent condition. We find nothing in the applicable statute that precludes such pro tanto reimbursement. In most cases the entire disability will and should be provided for by employer-carrier in successive injury or pre-existing disability or disease cases, but an anomalous situation of this kind (being pre-Stephens and Evans) should not go unreimbursed by the Fund in the face of an uncontradicted finding of *677 “excess” compensation being made in a merger case. Our holding in the Cypress Gardens Citrus Products case was not intended to legally preclude reimbursement from the Fund of pro tanto “excess” liability payments of employers or carriers but rather was a statement of the fact that employer-carrier in most cases compensates a handicapped worker for his entire disability where his pre-existing condition is known to employer.
The order of the Industrial Relations Commission is quashed with direction on remand that the order of Judge Harrington be reinstated.
It is so ordered.
ROBERTS, C. J., and CARLTON, McCAIN and DEKLE, JJ., concur.