ADKINS, Chief Justice:
In Southland Corporation v. Special Disability Fund, 284 So.2d 381 (Fla.1973), upon our first consideration of this case, we reversed and remanded to the Industrial Relations Commission with directions to further remand to the Judge of Industrial Claims for proceedings consistent with our interim decision in Special Disability Trust Fund v. Fleet Transport Co., 283 So.2d 31 (Fla.1973). The case is now before us again on writ of certiorari to review the order of the Commission rendered pursuant to our earlier mandate.
A brief review of the facts of this case reveals that an employee of the Respondent, Southland, became involved in an argument with an intoxicated customer at his place of employment on June 9, 1969. As a result of this incident the employee became ill and was admitted to a hospital where he lost consciousness and died two *902 days later of a brain stem hemorrhage. Thereafter, Southland and the widow of the deceased entered into disability benefit negotiations and reached a compromise settlement, which was approved by order of the Judge of Industrial Claims on November 19, 1970. The amount of the lump sum settlement was $7,723.61. Southland then filed a claim against the Fund for reimbursement pursuant to Fla.Stat. 440.49(4) (d), contending that the deceased employee had died due to the combined effect of his pre-existing hypertension and the effects of the June 9, 1969, incident with the intoxicated customer.
The Judge of Industrial Claims found inter alia that 40% of the employee’s death was attributable to the accelerating accident and 60% was due to the pre-exist-ing condition; that the widow and four minor children were entitled to full death benefits in the sum of $15,000, of which 40% or $6,000 was attributable to the accelerating accident of June 9, 1969, and is the obligation solely of the employer/carrier ; that the employer/carrier having paid the sum of $7,723.61 in compensation benefits, is entitled to be reimbursed by the Fund in the amount of $1,723.61, which represents the excess (as per F.S. 440.49(4) (d), F.S.A.).
The Commission reversed the Judge of Industrial Claims, finding instead that only 40% of the death was due to the preexisting condition, and that the order improperly included reimbursement of funeral expenses. The cause was remanded to the judge to determine if the claim reached the $1,500 jurisdictional minimum, exclusive of funeral expenses.
On certiorari to. this Court, we then reversed and remanded the cause for further consideration in light of Fleet Transport, after holding that the decision therein is applicable to this case.
On remand, the Commission lj,eld:
“We interpret the order of the Supreme Court to hold that Petitioners, The Southland Corporation d/b/a 7-11 Stores and Travelers Insurance Company, its carrier, are entitled to reimbursement from the Special Disability Trust Fund on the basis of 40% of the amount actually paid by the employer/carrier pursuant to the settlement arising out of the joint stipulation which has been approved by the Judge of Industrial Claims. Such order of .the Supreme Court makes no specific reference to the deduction of the amount required for funeral expenses, but appears to require a full 40% reimbursement by the Special Disability Trust Fund of the total amount paid rather than 40% of the amount which might have been due had full death benefits been paid had there been no settlement.”
From this decision the Fund seeks review by writ of certiorari, contending that the Commission erred in not applying or improperly applying Fleet Transport to the case of compensable death and in ordering the Fund to reimburse funeral expenses.
In Fleet Transport, we held:
“Only two facts are really necessary for the proper functioning of the Fund. First, it must be determined how much the employer has been required to pay in compensation and medical benefits. Second, it must be determined how much the employer would have had to pay had the claimant not suffered from the preexisting permanent physical impairment. The latter is the amount properly borne by the employer, and the difference between the former and the latter is the amount for which the employer can properly seek reimbursement from the Fund, if that amount exceeds the minimum requirement of $1500.00. Fla.Stat. § 440.49(4) (f), F.S.A.
“Thus, for purposes of implementing Fla.Stat. § 440.49, F.S.A., the Judge of Industrial Claims must make findings of fact as to the dollar amount of compen *903 sation and medical benefits actually paid by the employer, and as to the amount of compensation and medical benefits which would have been paid on the basis of the accident alone without the merger effect with the pre-existing permanent physical impairment. It is only the ratio of compensation which was actually paid to compensation which would have been paid for the accident alone — without consideration of medical benefits — which determines the portion of temporary disability compensation to be borne by the Fund.” 283 So.2d at 32, 33.
The Commission held sub judice that 40% of whatever was paid Southland must be reimbursed by the Fund. In other words, since 60% of the cause of death is attributable to the accelerating accident then 40% of the actual death benefits paid, which are attributable to the pre-existing hypertension, should be reimbursed by the Fund. Southland contends that pursuant to Fleet Transport it should be reimbursed 100% of the death benefits paid to the dependents of the deceased since the death would not have occurred in the absence of the pre-existing condition, a prerequisite to Fund reimbursement under F.S. 440.49 (4)(d).[1] The Fund protests that if such were the case it would have to reimburse 100% in all death cases, a result obviously not intended by the Legislature in adopting F.S. 440.49. Instead the Fund takes the position that Southland’s liability for the accelerating accident or subsequent injury considered by itself must be a fixed sum, as it is in disability cases, based upon the total allowable as compensation for death. In other words, since the maximum allowed for death benefits at the time of the accident was $15,000 (increased to $25,000 in 1973, see F.S. 440.16, Laws 1973, 73-127, § 6) and since the accident was responsible for 60% of the death, Southland would have had to pay 60% of the $15,000 or $9,000 for the accident’s acceleration of death considered by itself. Applying the Fund’s formula it is clear that there would be no excess to be reimbursed by the Fund under application of the Fleet doctrine.
Both the position taken by Southland and that taken by the Fund have merit. Each litigant has argued forcefully and persuasively for the position each espouses. Southland points out that the accelerating accident, when considered by itself and not in conjunction with the pre-existing condition, would have produced little or no injury whatsoever and certainly not death. Indeed by the very language of the statute death must not have occurred but for the presence of the pre-existing condition. Why then, asks Southland, must it be held responsible for any of the death benefits when it is clear that the death was caused by the pre-existing condition, in the absence of which death would not have occurred and no benefits at all would have been forthcoming. The very intent of the Fund provisions is to encourage the employment of the handicapped by assuring the employer that he will be liable for the accelerating accident only, as if the injury it produced were the only one extant and as if the em *904 ployee were in fact unhandicapped by anv previous impairment.
The result urged by Southland however, would not necessarily require 100% Fund reimbursement in all death cases as feared by the Fund. It is arguable that the requirement that the accelerating accident be considered by itself merely requires the assessment of disability benefits which would have 'been owed had the decedent not suffered from the pre-existing impairment. For example, if the accelerating accident, although not capable of producing death per se, were substantial enough to cause serious or disabling injury, then it follows that, considered by itself, the accident would require the payment of disability compensation - by the employer. Thus, under the Fleet doctrine, this potential disability compensation would be deducted from the total death benefits payable in fulfillment of the second requirement of Fleet, i. e., the determination of how much compensation the employer would have had to pay had the decedent not suffered from a previous impairment. The difference would be the amount of reimbursement owed by the Fund. On the other hand, if the accelerating accident produces slight or no injury per se, but merely provides the catalyst for the chain of events leading to death, which is frequently the case in hypertension-causing death, then the entire responsibility for the death would be rightly attributable to the pre-existing impairment and hence to the Fund.
Since the enactment of the Fund in 1955, its provisions have been revised several times by the Legislature, in part due to reactions to decisions of this Court and also in recognition of the need for more workable and salutory provisions. The original provisions dealing with reimbursement from the Fund when death resulted from the combination of an industrial accident and a pre-existing impairment or disease provided that the employer
“ . . . shall be reimbursed . for all benefits payable in excess of those allowed for such subsequent injury or occupational disease when considered by itself and not in conjunction with the previous permanent physical impairment. F.S. 440.15(5) (d)(3) (1955)." (Emphasis supplied.)
The wording of this provision supports the argument that the employer is liable only for disability compensation for the subsequent injury, not death benefits, and it is this compensation, if any, that is to be deducted from the total compensation paid for death. Section 440.15(5) (d) (3) was amended in 1959, however, the effect of which requires re-examination. See F.S. 440.49(4) (d) supra, for the amended version.
It is not clear whether the change in the language of the statutes was one of form rather than substance. Perhaps it was merely an attempt to more narrowly define the intent of the Legislature and therefore simply restated the statute in more precise language. If that is the case we fear that however valiant may have been the attempt the result leaves much to be desired, for the provision is not happily drafted. Reading the amended version in conjunction with F.S. 440.02(19),[2] however, elicits the unavoidable conclusion that the Fund’s liability in a death case is for all compensation for death paid over and above that reasonably attributable to the last accident’s acceleration of death. In *905 other words, the employer is not liable merely for the disability compensation effected by the accelerating accident considered by itself, rather he is liable for a part of the death itself, i. e., the acceleration of the death that is reasonably attributable to the accident. The clear implication of the statutory language is that the employer in a case where an injury compounds a pre-existing condition to cause death is liable for the compensation owed to the employee for that portion of his life which the accelerating accident cut short. jJWe arrive upon the real issue in this case, peeled to the core: in contemplation of Fleet Transport should the second finding required to be made in the determination of Fund reimbursement be based upon the maximum benefits allowed by law or upon the benefits actually paid by the employer ? The death benefits sub judice were paid pursuant to a lump sum settlement which fell short of the maximum benefits allowed by law, although the Judge of Industrial Claims found that the decedent’s dependents were entitled to maximum benefits of $15,000. The Fund urges that the employer’s liability should be 60% of the maximum benefits allowed by law, rather than 60% of the benefits actually paid, as held by the Commission. The employer’s liability must be fixed and certain, as it is in disability cases. That is, just as in disability cases, where the percentage of disability due to the last accident is figured on a percentage of 350 weeks, the Fund contends that in death cases the percentage of compensation for death reasonably attributable to the last accident’s acceleration of death must also be fixed upon a percentage of the maximum compensation for death, whether it be $15,000.00, $25,000.00 or 350 weeks.
We agree. The compensation attributable to the accelerating accident does not vary depending on the amount of compensation ultimately paid by the employer, as the Commission has held. While the amount of excess compensation may vary, depending on the total paid by the employer, the amount attributable to the accelerating accident remains a constant, easily determinable figure. Just as in disability cases, where the percentage of disability due to the last accident is figured on a percentage of 350 weeks, so too in death cases is the percentage due to the accelerating accident to be fixed upon a percentage of the maximum compensation for death, in this case, $15,000. Sub judice, since the accelerating accident was found to have contributed 60% to the death, the amount of compensation attributable to that accident is therefore $9,000, or 60% of the maximum compensation for death of $15,000. That amount remains constant regardless of how much the employer ultimately pays in death benefits. See Tingle v. Board of County Commissioners (Dade County Port Authority), 214 So.2d 1 (Fla.1971), where we held that compensation to the deceased’s dependents shall be allowed for that portion of the cause of death attributable to the accelerating accident. See also Hampton v. Owens-Illinois Glass Co., Paper Products Division, 140 So.2d 868 (Fla. 1962),[3] where we stated that compensation for death shall be allowed
“ . . .in the proportion which the industrial accident bears to the total allowable recovery if 'the death were produced entirely by an industrial accident. For example, under the existing statute, if the industrial accident is found to be 10% of the cause of death, then recovery would be allowed for 10% of 350 weeks or 35 weeks, or if, as here, the industrial accident is found to have contributed 30% to the cause of death, compensation *906 is allowed for 30% of the statutory period.” . At 870.
At this juncture we point out the obvious fact that the merger of pre-existing impairment and subsequent injury resulting in death presents a somewhat different situation than does merger resulting in permanent disability. The significance of this distinction lies in the determination of the excess compensation ultimately to be reimbursed the employer. In a disability case, for example, a previous injury to the left arm which resulted in a 15'% disability rating may merge with an injury to the right arm (20% disability rating), effecting an overall 50% permanent partial disability of the body as a whole. If the employer is responsible for the second accident only, the excess compensation, assuming benefits were paid for the entire permanent partial disability, is not just that compensation attributable to the pre-existing impairment that would have been apportioned out of the award in an apportionment situation, it would also include the compensation which is attributable to the merger’s enhancement of the resulting entire disability. Hartford Accident & Indemnity Co. v. Special Disability Fund, 249 So.2d 673 (Fla.1971); Fleet Transport, supra. In a death case, however, a person cannot be said to be 20% dead or 10% dead. One is either dead 100% or not at all. The relative causal effect of the pre-existing disease and the accelerating accident in producing the death requires that the contributions to the death made by the preexisting disease and the accelerating accident be expressed in relative percentages, the sum of which equals 100%. Sub judice, those percentages were found to be 40% attributable to the pre-existing hypertension and 60% attributable to the accelerating accident. Unlike disability cases, however, it is apparent that in death cases where the employer/carrier is entitled to reimbursement the excess compensation owed by the Fund will be that amount which would have been apportioned out of the claimant’s award of compensation in an apportionment situation, had maximum allowable death benefits been paid. Fleet Transport provides the formula by which that reimbursement is to be determined.
Summarizing what we have said so far, we reaffirm our holding that Fleet Transport is applicable to the case sub judice, even though the result of a merger of the pre-existing permanent physical impairment and the subsequent injury is death rather than permanent disability. Therefore the dual findings of fact required to be made in Fleet Transport must also be made in the case sub judice with slight variation as to the second required finding. In the case of resulting permanent disability, as in Fleet Transport, wé held that it must be determined how much compensation and medical benefits would have been paid on the basis of the accident alone without the merger effect of the pre-exist-ing permanent physical impairment. In the case of death, however, we hold that it must be determined how much compensation would have been paid for acceleration of death reasonably attributable to the subsequent injury or occupational disease when considered by itself and not in conjunction with the previous permanent physical impairment.
It follows that the Commission improperly applied Fleet Transport in holding that the Fund must reimburse 40% of the actual benefits paid by Southland. Applying the two-step procedure enunciated in Fleet it is clear that the judge must first determine the amount of death benefits actually paid, then subtract from that figure the amount of death benefits that would have been paid had the death been caused by the industrial accident considered by itself. Albeit the latter determination is simply the mathematical product of the percentage of death caused by the industrial accident times the maximum death benefits determined to be owed the dependents, the ultimate result will obviously *907 differ from that reached by the Commission.
The next question is whether funeral expenses paid by Southland are reimbursable by the Fund. Fla.Stat. § 440.49 (4) (d) provides that the employer shall pay the funeral expenses and death benefits provided in Chapter 440 but shall be reimbursed from the Fund for all excess “compensation for death” otherwise payable for acceleration of death. We find that the term “compensation for death” describes “death benefits”, excluding funeral expenses.
The Florida Special Disability Fund provisions are modeled after the New York Workmen’s Compensation Law.[4] Article II, § 15(8)(d), New York Compensation Law is almost identical to § 440.49(4) (d), F.S.A.[5] It provides, in pertinent part, that:
“The employer . . . shall in the first instance pay the funeral expenses and the death benefits prescribed by this chapter, but he or his insurance carrier, ., shall be reimbursed from the special disability fund created by this subdivision for all death benefits payable in excess of one hundred four weeks.”
In Unit Wall v. Speh, supra, Note 4, we noted that the decisions of the New York courts pertinent to the fund provisions have special significance in interpreting the Florida provisions. See also Pylant v. Smith and Sponholtz, 2 FCR 408 (1957), cert. denied; Smith and Sponholtz v. Pylant, 98 So.2d 90 (Fla. 3d DCA 1957) and State v. Kelly, 76 So.2d 798 (Fla.1954).
In Krause v. Ronnell Decorators, 1 N.Y.2d 676, 115 N.Y.S.2d 202, 133 N.E.2d 710 (1956), the New York Court of Appeals held that the employer is not entitled to reimbursement from the special disability fund for funeral expenses under Article II, § 15(8) (d) New York Workmen’s Compensation Law. Although the New York statute provides that the employer shall be reimbursed for all excess “death benefits”, we hold that the term “compensation for death” used in F.S. 440.49(4) (d) is the equivalent of the term “death benefits” used in the New York statute as well as in F.S. 440.49(4) (d). It seems reasonably clear from a reading of the statute that the Legislature did not intend to include funeral expenses in the general term “death benefits”, or otherwise there would have been no point in the separation of the two items. We note that the Florida Legislature has recently amended § 440.49(4) (d), F.S., (1974), providing for reimbursement of 75'% of the amount paid as funeral expenses. However, this amendment supports our conclusion that prior to the effective date (October 1, 1974) of the amendment, funeral expenses are not reimbursable from the Florida Special Disability Trust Fund.
The decision of the Industrial Relations Commission is quashed, with directions to remand for proceedings not inconsistent herewith.
ROBERTS and OVERTON, JJ., and CHAPPELL, Circuit Judge, concur.
ENGLAND, J., dissenting with an opinion.

. 440.49(4) (d) provides, with emphasis supplied to the essential elements:
“(d)When death results. If death results from the subsequent disability contemplated in paragraph (e) within one year after the subsequent injury or within five years after the subsequent injury when disability has been continuous since the subsequent injury, and it shall he determined that the death would not have occurred except for such pre-existing permanent physical impairment, the employer shall in the first instance pay the funeral expenses and the death benefits prescribed by this chapter, but subject to the limitations specified in paragraph (f) he shall be reimbursed from the special disability trust fund created by this subsection for all compensation for death payable in excess of the compensation which otherwise would have been payable for acceleration of death reasonably attributable to the subsequent injury or occupational disease when considered by itself and not in conjunction with the previous permanent physical impairment.”

. F.S. 440.02(19).
“ . . . Where a pre-existing disease or anomaly is accelerated or aggravated by accident arising out of and in the course of employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable with respect to permanent disability or death. Compensation for temporary disability and medical benefits provided by this chapter shall not be subject to apportionment under this subsection.” (Emphasis supplied)

. Although Hampton involved apportionment and not reimbursement from the Fund, the procedure used for determining the amount of compensation for death found to be attributable to the industrial accident remains valid for the determination of the amount of compensation attributable to the last accident’s acceleration of death considered by itself.

. Unit Wall v. Speh, 133 So.2d 304 (Fla.1961).

. See text of 440.49(4) (d) quoted at Note 1, supra.